**Charles MYERS, Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

**No. 1–1080A276.**

Court of Appeals of Indiana,
First District.

July 1, 1981.

Rehearing Denied August 11, 1981.

Carol A. Glass, Indianapolis, for appellant-defendant.

Theodore L. Sendak, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Charles Myers appeals his jury conviction of arson. We affirm.

## FACTS

Between 6:30 and 6:40 a. m. on February 8, 1980, the home of 81 year old Leroy Smith, which is located in Mixerville, Indiana, was found burning. Earlier that morning Myers had visited Smith at the home of Smith's daughter and son-in-law, Mildred and Lawrence Handley, located in a trailer park in Oxford, Ohio, about a 10 minutes' drive from Mixerville. Oxford police were called shortly after 6:00 a. m. to remove Myers from the premises because Myers had become abusive to and argumentative with Smith. In the presence of two Oxford, Ohio, police officers at approximately 6:15 a. m. Myers twice threatened to burn down Smith's house. At least two other persons passing by Smith's house on their ways to work at between 6:30 and 6:40 a. m. saw a light grey older model car, matching the description of Myers's car, parked on the road in front of Smith's house. At the scene of the fire about two hours later Myers told Helen Coy, Mildred Handley's sister, that he had "taken care" of the house, and in the presence of the firemen he also stated that he would burn it again for three hundred dollars. Later that same morning Myers detailed his setting the fire in a tearful session with Mildred Handley. Charges of arson were filed against Myers the same day, and trial was held May 27 and 28, 1980, resulting in a guilty verdict.

## ISSUES

1. Whether it was error for the trial court to refuse to give Myers's tendered instructions as to criminal mischief, circumstantial evidence, admissions, and intoxication.

2. Whether it was error to admit a police log into evidence and to permit testimony concerning it.

3. Whether Myers's counsel was incompetent.

4. Whether Myers's condition prevented him from obtaining a fair trial.

## DISCUSSION AND DECISION

*Issue One*

*Instruction on Criminal Mischief*

Myers alleges that the trial court erred in refusing to give the following instruction which he tendered on criminal mischief: "The defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the Information. Criminal Mischief is an included offense of Arson." We agree with Myers that criminal mischief, Ind.Code 35–43–1–2,[1] is an

1. West's AIC 35–43–1–2 Mischief:
 "A person who:

 (1) recklessly, knowingly, or intentionally damages property of another person without his consent; or

included offense of arson [2] but do not agree that the court erred in refusing to give an instruction to that effect in this case. First, Myers's tendered instruction itself is not good because it fails to define the offense of criminal mischief. Second, the court did not err in refusing to instruct the jury on the included offense of criminal mischief where there was no dispute as to whether or not the distinguishing elements of damage by *fire* to a *dwelling* had been established. As pointed out by Judge Staton in *Roddy v. State*, (1979) Ind.App., 394 N.E.2d 1098 at 1111:

> "If the evidence which indicates that the defendant did in fact commit the distinguishing element is uncontroverted, then the instruction on the lesser included offense should not be given to the jury. If, however, . . . evidence of probative value raises a 'serious dispute' regarding whether the defendant in fact committed the distinguishing element(s), an instruction and form of verdict on the lesser included offense should be given to the jury." (Citations omitted.)

Here the evidence was uncontroverted that Smith's dwelling had been damaged by fire. Thus, if Myers was the party guilty of damaging Smith's dwelling (property) he was guilty of arson and not criminal mischief.

*Instruction on Circumstantial Evidence*

■ Myers asserts that the trial court erred in refusing his tendered instruction number 6:

> "In this case some of the evidence relied on by the State for a conviction is purely circumstantial. You are the sole and exclusive judges of the weight of the testimony. The Court has no right in the least to express any opinion concerning the weight of the evidence and will not do so. Yet it is made the duty of the Court to advise you as to the law of the case and upon the question and the measure of proof required. Where the evidence is wholly circumstantial upon any material part, the Court instructs you that the law is that circumstantial evidence is in its nature capable of the highest degree of moral certainty. Yet from its very nature it requires careful and patient consideration. The true test by which to determine the value of circumstantial evidence in respect to its sufficiency to warrant a conviction in a criminal case is not whether the proof establishes circumstances which are consistent or which coincide with the hypothesis of the guilt of the accused, but whether the circumstances satisfactorily established are of a conclusive character and point so surely and unerringly to the guilt of the accused, as to exclude every other reasonable hypothesis of his innocence. The force of circumstantial evidence being exclusive in its character, the mere coincidence of a given number of circumstances with the hypothesis of guilt or that they would concur for or concur with or render possible the guilt of the accused is not a reliable or admissible test, unless the circumstances rise to such degree of cogency and force as in the order of natural cause and effect to exclude a moral certainty, every other hypothesis except the single one of guilt. The proof must not only coincide with the hypothesis of guilt, but it must be inconsistent with every other reasonable conclusion."

The state contends, on the other hand, that the jury was adequately instructed on how to treat circumstantial evidence by the

---

(2) knowingly or intentionally causes another to suffer pecuniary loss by deception or by an expression of intention to injure another person or to damage the property or to impair the rights of another person; commits criminal mischief, a Class B misdemeanor. However, the offense is a Class A misdemeanor if the pecuniary loss is at least two hundred fifty dollars ($250) but less than two thousand five hundred dollars ($2,500), and a Class D felony if (i) the pecuniary loss is at least two thousand five hundred dollars ($2,500), (ii) the damage causes a substantial interruption or impairment of utility service rendered to the public, or (iii) the damage is to a public record. *As added by Acts 1976, P.L. 148, SEC. 3. Amended by Acts 1977, P.L. 340, SEC. 41."*

2. See footnote 5 *infra*.

court's preliminary instruction on reasonable doubt and final instruction number 9 which reads as follows:

"Direct evidence means evidence that directly proves a fact, without an inference, and which in itself, if true, conclusively establishes that fact.

"Circumstantial evidence means evidence that proves a fact from which an inference of the existence of another fact may be drawn.

"An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts.

"It is not necessary that facts be proved by direct evidence. Both direct evidence and circumstancial evidence are acceptable as a means of proof. Nether [sic] is entitled to any greater weight than the other.

"(When proof of guilt is by circumstantial evidence only, you should not find the defendant guilty, unless the facts and circumstances proved exclude every reasonable theory of innocence.)"

We agree with the state. Myers sums up the crux of his argument in favor of his instruction as follows: "In short, the court's instruction is correct as far as it goes, but Appellant's tendered instruction is a more complete and adequate statement of the law." Appellant's Brief at 23. This court has already held that "[a]n instruction which is correct will not be found to be erroneous merely because it was not an ampler statement of the law." *Smith v.*

*State,* (1980) Ind.App., 403 N.E.2d 869, 875, *trans. denied.* We find no error in the trial court's refusal to give Myers's instruction number 6.

*Instruction on Admissions*

■ Myers again argues that his tendered instruction number 7 [3] was an ampler statement than the court's instruction number 11 [4] on admissions and therefore that his should have been given instead of the court's. We have already dealt with this argument above and would point out here in addition that the court properly rejected Myers's instruction because of its argumentative nature. Furthermore, some doubt is raised as to whether Myers's tendered instruction is a correct statement of Indiana law, since his only citation of authority for the instruction is to a Georgia case. The court did not err in refusing Myers's tendered instruction number 7.

*Instruction on Intoxication*

■ Myers argues that the trial court erred in refusing to give his tendered instruction number 5 setting out the affirmative defense of voluntary intoxication. He recognizes that at the time of the commission and trial of the offense in Indiana voluntary intoxication was defined by statute as a defense only to the extent that it negated specific intent. Later in 1980, however, Ind.Code 35–41–3–5(b) was amended to read: "Voluntary intoxication is a defense only to the extent that it negates ~~specific intent~~ an element of an offense referred to by the phrase 'with in-

**3.** "Now, Gentlemen of the Jury, the State contends the defendant has made an admission pertaining to the case. Whether that is true or not is a matter for your determination, and I give you the rules of law pertaining to admissions: An admission as applied to criminal cases is the avowal of a fact or circumstance by the defendant, not amounting to a confession of guilt but tending to prove the offense, and from which guilt may be inferred. An incriminating statement is one made by the defendant which tends to establish the guilt of the accused, or one from which, together with other proven facts, if any, guilt may be inferred, or one which tends to disprove some defense set up by the accused. Admissions and incriminating statements are not direct but circumstantial evidence and should be scanned with care and received with great caution. The jury may believe admissions or incriminatory statements in whole or in part, believing that which they find to be true and rejecting that which they find to be untrue."

**4.** "Evidence has been introduced that the defendant made an admission of a fact relating to the crime charged in the indictment.

It is for you to determine (whether the defendant made the admission, and if so) what weight should be given to the admission. In determining the weight to be given to an admission, you should consider all of the circumstances under which it was made."

tent to' or 'with an intention to.' " Acts 1980, P.L. 205. Had the amended version of the statute been in effect on February 8, 1980, it is clear that voluntary intoxication would not be available to Myers as a defense to arson as it was defined by Ind.Code 35–43–1–1(a)(1) at the time of the offense.[5] Myers contends, however, that arson as so defined is a crime of specific intent because, he asserts, under the current Indiana penal code there are no longer any crimes of general intent and "any time the language 'intentionally' appears in a statute defining a crime, it is appellant's assertion that in effect the state is required to prove a form of specific intent." Appellant's Brief at 31. As authority for his position Myers cites *Hooker v. State*, (1979) Ind.App., 387 N.E.2d 1354, *trans. denied*, where Judge Lybrook wrote at 387 N.E.2d 1358, footnote 1:

> "Specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. General criminal intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of a subjective desire to have accomplished such result. 22 C.J.S. *Criminal Law* §§ 32 and 35 (1961). This dis-

tinction, germane to a discussion of voluntary manslaughter under Ind.Code 35–13–4–2, since repealed, will no longer be relevant under the 1977 Penal Code which codifies the degrees of *mens rea*, or mental intent, required for the commission of a crime. Ind.Code 35–41–2–2." Myers then deduces that the change of wording in the voluntary intoxication statute as set out above was done in recognition of the fact that specific intent as developed by case law has no meaning after the enactment of the Indiana Penal Code in 1977.

We are reluctant to accept Myers's argument at face value because we believe that specific intent may still be a useful concept under the current penal code. Furthermore, while the currently codified definitions of *mens rea* may certainly include the subjective aspects of specific intent, they are also broad enough to include the objective overtones of general intent. In fact, it is difficult to find courts or commentators today who will recognize as a specific intent crime any definition of the offense not containing the specific words "with the intent to" effect a certain result. In the present context, for example, arson is clearly a specific intent crime when one is charged pursuant to Ind.Code 35–43–1–1(c),[6] *i. e.*, with

---

5. West's AIC 35–43–1–1 Arson:

"(a) A person who, by means of fire or explosive, knowingly or intentionally damages:
(1) a dwelling of another person without his consent;
(2) property of any person under circumstances that endanger human life; or
(3) property of another person if the pecuniary loss is at least twenty thousand dollars ($20,000); commits arson, a Class B felony. However, the offense is a Class A felony if it results in either bodily injury or serious bodily injury to any other person.
(b) A person who, with intent to injure person or damage property, unlawfully places an explosive commits arson, a Class B felony. However, the offense is a Class A felony if it results in either bodily injury or serious bodily injury to any other person.
(c) A person who commits arson for hire commits a Class B felony. However, the offense is a Class A felony if it results in bodily injury to any other person. *As added by Acts 1976, P.L. 148, SEC. 3. Amended by Acts 1977, P.L. 340, SEC. 40.*"

6. West's AIC 35–43–1–1 (Supp.1980):

"(a) A person who, by means of fire or explosive, knowingly or intentionally damages:
(1) a dwelling of another person without his consent;
(2) property of any person under circumstances that endanger human life; or
(3) property of another person if the pecuniary loss is at least five thousand dollars ($5,000); commits arson, a Class B felony. However, the offense is a Class A felony if it results in either bodily injury or serious bodily injury to any other person.
(b) A person who commits arson for hire commits a Class B felony. However, the offense is a Class A felony if it results in bodily injury to any other person.
(c) A person who, by means of fire or explosive, knowingly or intentionally damages property of any person with intent to defraud commits arson, a Class C felony. *As amended by Acts 1980, P.L. 159, SEC. 4.*"

the specific intent to defraud, *e. g.*, an insurance company. *See also*, 6A C.J.S. *Arson* § 5 (1975). However, arson at common law and in the absence of a statute prescribing specific intent, is considered a crime of general intent. *Id.*, § 6; 5 Am. Jur.2d *Arson and Related Offenses* § 10 (1962). Common law arson was defined as "the wilful and malicious burning of another's dwelling house, or of an outhouse within its curtilage." *Fox v. State*, (1979) Ind. App., 384 N.E.2d 1159, 1162. In contrast, Texas today has what has been recognized as a statutory definition of arson which makes specific intent an element of the offense:

"(a) A person commits an offense if he starts a fire or causes an explosion with intent to destroy or damage any building, habitation, or vehicle:

(1) knowing that it is within the limits of an incorporated city or town;

(2) knowing that it is insured against damage or destruction;

(3) knowing that it is subject to a mortgage or other security interest;

(4) knowing that it is located on property belonging to another;

(5) knowing that it has located within it property belonging to another; or

(6) when he is reckless about whether the burning or explosion will endanger the life of some individual or the safety of the property of another.

(b) It is a defense to prosecution under Subsection (a)(1) of this section that prior to starting the fire or causing the explosion, the actor obtained a permit or other written authorization granted in accordance with a city ordinance, if any, regulating fires and explosions.

(c) An offense under this section is a felony of the second degree, unless any bodily injury less than death is suffered by any person by reason of the commission of the offense, in which event it is a felony of the first degree. Amended by Acts 1979, 66th Leg., p. 1216, ch. 588, § 2, eff. Sept. 1, 1979."

V.T.C.A., Penal Code, § 28.02 at 7 (Supp. 1980). *See Beltran v. State*, (1980) Tex.Cr. App., 593 S.W.2d 688; *Romo v. State*, (1980) Tex.Cr.App., 593 S.W.2d 690.

We believe, therefore, that the charge of arson under which Myers was convicted in this case providing that "[a] person who, by means of fire or explosive, knowingly or intentionally damages: (1) a dwelling or another person without his consent ... commits arson ..." requires no more than the proof of general criminal intent. Such is the requisite intent necessary to establish criminal culpability and to distinguish the act of arson from an accidental or negligent act having the same result. Appellant was not entitled to an instruction on voluntary intoxication to negate the general intent involved in the crime of arson with which he was charged. *See State v. Doyon*, (1980) R.I., 416 A.3d 130; *State v. Jones*, (1980) 300 N.C. 363, 266 S.E.2d 586.

In this case, moreover, even if we were to decide that the offense of which appellant was convicted required proof of the element of a specific rather than general criminal intent, we would have to conclude that the court did not err in refusing appellant's tendered instruction for at least two reasons. First, the burden of substantiating the defense of intoxication rests with the accused. *Norris v. State*, (1981) Ind., 419 N.E.2d 129; *Dalton v. State*, (1981) Ind.App., 418 N.E.2d 544 (trans. pending). Second, mere intoxication alone, in the absence of such mental incapacity resulting therefrom as to render a person incapable of appreciating the wrongfulness of his conduct or of conforming his conduct to the requirements of the law, is not sufficient to relieve one of responsibility for his acts. *Jackson v. State*, (1980) Ind., 402 N.E.2d 947. Here, Myers himself offered no evidence of his being intoxicated at the time of the fire, and the only evidence of his intoxication in the record was that provided by Mrs. Handley who testified that several hours after the fire Myers was drunk when he tearfully recounted how he had set the fire. As Judge Robertson wrote: "In deciding whether an instruction on intoxication should be given, the trial court must determine whether there exists

an adequate evidentiary basis for the defenses." *Dalton v. State, supra,* at 418 N.E.2d 546. It is obvious in the case at bar that there was no evidentiary basis to support an instruction on intoxication, and the court did not err in refusing appellant's instruction number 5. *Wombles v. State,* (1979) Ind., 383 N.E.2d 1037; *Wolfe v. State,* (1978) Ind., 383 N.E.2d 317.

*Issue Two*

 Myers argues that it was error for the court to admit the state's Exhibit 1, a copy of the Oxford police radio log, into evidence because there was not a sufficient foundation laid for its admission as a business record. The objection which appellant made at trial and the argument in his brief focus on the fact that Officer Brooks was not the proper person to put the log into evidence, the proper person being the one who prepared it. The state points out, however, that the maker or entrant of a notation on a business record need not testify, citing *Crosson v. State,* (1978) 268 Ind. 511, 376 N.E.2d 1136. In *Crosson* Justice Pivarnik wrote:

"With relation to the question of the business records exception to the hearsay rule, this exception does not mean that the sponsor of an exhibit must have personally made it, filed it, or have had first-hand knowledge of the transaction represented by it. He need only show that it is part of the records kept in the routine course of business and placed in the record by one authorized to do so, who had personal knowledge of the transaction represented at the time of entry. *Jones v. State,* (1977) Ind., 369 N.E.2d 418 at 421; *American United Life Ins. Co. v. Peffley,* (1973) 158 Ind.App. 29 at 36–37, [3]01 N.E.2d 651 at 656, *rehearing denied,* 158 Ind.App. 29, 306 N.E.2d 131."

376 N.E.2d 1141. Here Officer Brooks testified that the log was prepared in the regular course of police business and made at the time of the event recorded. He explained that the notations were made by the dispatcher upon receipt of a telephone call; thus, the date and time noted on the log were within the personal knowledge of the dispatcher who typed up the log. The requirements of *Crosson* having been met, it was not error for the trial court to admit state's Exhibit 1.

*Issue Three*

Myers alleges his appointed counsel was incompetent and in support of this contention he sets forth the following facts:

"1. The defense counsel chose to call no witnesses for the defendant to include Indiana State Police Technician, M.T. Oliver, who had made a laboratory study of samples taken from the alleged arson scene and had found no presence of accelerant in those samples.

"2. Trial counsel failed to petition the Court for an expert witness to testify as to arson investigation in rebuttal of the State Fire Marshal Deputy.

"3. Counsel did not file a motion to produce and as a result was surprised by various exhibits of the State of Indiana at trial.

"4. The trial counsel did not depose any of the State's witnesses prior to trial.

"5. This cause was defense counsel's first criminal jury defense trial."

 In Indiana there is a strong presumption that an attorney has properly discharged his duties to his client, thus strong and convincing proof is required to overcome that presumption. *Leaver v. State,* (1981) Ind., 414 N.E.2d 959. To prevail on a claim that counsel inadequately represented him, a client must show that what the attorney did or did not do resulted in the trial as a whole being such a mockery of justice as to shock the conscience of the court. *Id.; Rahim v. State,* (1981) Ind., 417 N.E.2d 343. The facts which appellant sets out above as constituting such inadequate representation as to have resulted in a trial so lacking in justice as to shock our conscience must be viewed in the context of the totality of the circumstances surrounding not only counsel's actual conduct of the trial but also his pretrial preparations as well. *Leaver v. State, supra; Shoulders v. State,* (1978) 267 Ind. 538, 372 N.E.2d 168. Having reviewed

the totality of the circumstances surrounding counsel's representation of Myers as a whole we are not shocked into concluding that appellant's trial was a mockery of justice. Defense counsel engaged in several pretrial and trial activities on appellant's behalf, e. g., the making of a motion to reduce bail, the filing of a notice of alibi, the participation in a pretrial conference, and the making of a motion for the admission of evidence and of a motion in limine. During the trial defense counsel conducted lengthy cross-examinations of the state's witnesses, made pertinent objections and arguments, and tendered instructions. Inexperience in and of itself is certainly not the equivalent of ineffective counsel, *Hollon v. State*, (1980) Ind., 398 N.E.2d 1273, and "speculation as to what might have been more appropriate tactics or strategy is not relevant in determining an attorney's competence." *Duncan v. State*, (1980) Ind., 400 N.E.2d 1112, 1115. Likewise, the fact that the result was adverse to Myers does not reflect inadequate assistance of counsel. *Blackburn v. State*, (1973) 260 Ind. 5, 291 N.E.2d 686, *appeal dismissed* 412 U.S. 925, 93 S.Ct. 2755, 37 L.Ed.2d 152. Myers has failed to convince us that his counsel's overall assistance was so incompetent as to make his trial a mockery of justice.

*Issue Four*

 Myers's final contention is that he was denied a fair trial because of his physical condition at the time of trial. Myers states that he had requested the court to order both physical and psychiatric examinations, but that the court denied his petitions. Myers declares that the court's denial of his motion to reduce bail prevented him from obtaining his own medical or psychiatric assistance prior to trial and that the back pain which occurred during the trial interfered with his ability to participate in his own defense. The only authority which Myers cites for his position, admitting that there is no direct authority on point, is Ind.Code 35–5–3.1–1,[7] dealing with incompetence to stand trial.

We find nothing in the record to support appellant's contentions that he requested the court to order either a medical or a psychiatric examination. Nor do we find any request for a continuance because of severe back pain on the day of trial. We do find that the court ordered Myers to file an insanity defense, if he so intended, by a date certain. In the absence of a plea of insanity or incompetence, it was not error for the court to deny Myers's motion for a new trial merely because of his perceived diminished ability to participate in his own defense. *See Green v. State*, (Ind.1981) 421 N.E.2d 635.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.

---

7. West's AIC 35–5–3.1–1:

"(a) If at any time before the final submission of any criminal case to the court or jury trying the same, the court, either from its own knowledge or upon the suggestion of any person, has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the court shall immediately fix a time for a hearing to determine whether the defendant has the ability. The court shall appoint two (2) competent disinterested psychiatrists, who shall examine the defendant for the purpose of forming an opinion as to whether the defendant has that ability and shall testify concerning the same at the hearing.

(b) At the hearing, other evidence may be introduced if relevant to whether the defendant has the ability to understand the proceedings and assist in the preparation of his defense. If the court finds that the defendant has the ability to understand the proceedings and assist in the preparation of his defense, the trial shall proceed. If the court finds that the defendant lacks the ability, the trial shall be delayed or continued, and the court shall order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution. *As amended by Acts 1978, P.L. 145, SEC. 5.*"