442 So.2d 244 (1983)
Mitchell LINEHAN, Appellant,
v.
STATE of Florida, Appellee.
No. 82-1477.
District Court of Appeal of Florida, Second District.
November 9, 1983.
*245 Jerry Hill, Public Defender, Bartow, and Allyn Giambalvo, Asst. Public Defender, Clearwater, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
En Banc.
LEHAN, Judge.
This case involves questions of whether voluntary intoxication is a defense to arson; whether voluntary intoxication is a defense to first degree (felony) murder; and whether the trial court was required to instruct the jury on second degree (depraved mind) murder when the defendant was indicted for first degree (felony) murder.
These questions appear to be matters of first impression in Florida. They are not readily answered under existing principles. As to when voluntary intoxication may be a defense to criminal charges, the law is not uniform. Numerous commentators and courts agree that the law relative to that defense is unclear and that existing tests to determine when that defense may be available do not produce consistent, meaningful results. Therefore, in this opinion we undertake not only to provide answers to the specific questions at hand but also to outline reasons for those answers, the nature of certain difficulties implicit in present approaches to those answers, relevant policy considerations, and conceivable ultimate solutions to the difficulties. We endeavor to add a measure of predictability to the law within the bounds of stare decisis. The voluntary intoxication defense potentially exists for numerous criminal offenses and therefore merits serious consideration.
Defendant was indicted for arson under section 806.01, Florida Statutes (1981), and for first degree (felony) murder under section 782.04(1)(a), Florida Statutes (1981). The jury found defendant guilty on both charges. At sentencing the arson conviction was merged into the first degree murder conviction. The court adjudicated defendant guilty of first degree (felony) murder under section 782.04(1)(a), Florida Statutes (1981), and, in accordance with the jury recommendation, imposed a life sentence, requiring a minimum term of 25 years.
Defendant contends that there was error in the refusal of the trial court to instruct *246 on intoxication as a defense. We disagree and affirm the trial court on this point. Defendant also contends that the trial court erred in refusing to include in its first degree (felony) murder jury instructions a lesser included second degree (depraved mind) murder instruction. We must agree with this contention and reverse the first degree (felony) murder conviction. We find no merit in defendant's remaining contentions.
Following defendant's arrest as a suspect for the arson and an initial interview by a detective and a fire marshal official, a second interview was conducted by the same persons. After readvising defendant of his Miranda rights, the detective and fire marshall officially confronted appellant with contradictions from the initial interview. A few minutes into this interview appellant broke down and told them about actually starting the fire himself.
Defendant stated that on the day the fire occurred he had gone to St. Petersburg looking for his girl friend. During the afternoon, defendant went to several bars and to his girl friend's apartment trying to locate her. That evening he returned to her apartment. After not finding her there, he went to the back of the apartment building, up the rear fire escape and apparently gained entrance through a window to her apartment. After entering the apartment, defendant lighted a cigarette and stood, smoking the cigarette and flicking his lighter. He held the flame of the lighter to curtains in the apartment and then departed.
The ensuing fire engulfed the apartment building. All occupants except one managed to escape. The unfortunate victim had, without the landlord's permission, occupied a storage room for shelter during the night. The victim died from smoke inhalation.
A St. Petersburg Fire Department investigator testified that he found the area of deepest burn by a window in the apartment of defendant's girl friend. He found no basis for the fire having started by accidental means, and he classified the fire as arson. Testimony from another fire investigator was that the fire pattern was consistent with curtains in the girl friend's apartment having caught on fire and the fire having spread from there.
Two witnesses testified that they had seen defendant in an intoxicated state on the day of the fire. One of the witnesses testified that a few hours before the fire occurred she saw defendant at the building and that he was staggering. She also testified that she heard him mumble something about burning the building down. Later that evening, when the witness returned to the apartment building and found it in flames, she saw the defendant outside the building still staggering. The witness gave her opinion that the defendant was very drunk.
Defendant did not testify at the trial.

Voluntary Intoxication Is Not A Defense To Arson.
Defendant argues, and we agree, that voluntary intoxication is a defense to a "specific intent" crime, as contrasted with a "general intent" crime. See Cirack v. State, 201 So.2d 706 (Fla. 1967); Fouts v. State, 374 So.2d 22 (Fla. 2d DCA 1979). However, we find that arson under section 806.01, Florida Statutes (1981), is a general intent crime to which voluntary intoxication is not a defense.
Section 806.01 provides, in pertinent part:
(1) Any person who willfully and unlawfully by fire or explosion, damages or causes to be damaged:
(a) any dwelling whether occupied or not, or its contents... .
We construe the word "willfully" in the arson statute to mean that the accused need have had only a general criminal intent.
The distinction between "specific" and "general" intent crimes is nebulous and extremely difficult to define and apply with consistency. See Annot., 8 ALR 3d 1236 (1966). Although the difference between acts done deliberately and accidentally is not difficult to grasp, the "specific" versus "general" intent test requires a close distinction *247 between different types of intent. The difficulty is compounded by a variety of different types of statutory wording to which to apply the distinction.
On the surface, particular statutes defining criminal offenses which contain the words "willfully" or "intentionally" might be thought to encompass "specific intent" crimes simply because they contain words denoting intent as a requisite mental state. However, that approach would ignore a fundamental concept of criminal law that there are three broad categories of crimes: (1) "strict liability" crimes (e.g., DWI manslaughter or statutory rape) which are criminal violations even if done without intent to do the prohibited act, see Baker v. State, 377 So.2d 17, 19 (Fla. 1979); (2) general intent crimes; and (3) specific intent crimes. See W. LaFave & A. Scott, Handbook on Criminal Law § 28 (1972). The inclusion of words denoting a state of mind as an element of the offense (e.g., "willfully" or "intentionally") serves to distinguish general intent and specific intent crimes from strict liability crimes. But the distinction between general intent and specific intent depends upon how words denoting state of mind are used in a statute. The next three paragraphs in this opinion are intended as guidelines for making that distinction.
A "general intent" statute is one that prohibits either a specific voluntary act or something that is substantially certain to result from the act (e.g., damage to a building is the natural result of the act of setting a building afire). A person's subjective intent to cause the particular result is irrelevant to general intent crimes because the law ascribes to him a presumption that he intended such a result. "[A] man is to be taken to intend what he does, or that which is the necessary and natural consequence of his own act." R. Perkins, Perkins on Criminal Law 748 (2d ed. 1969), citing Harrison v. Commonwealth, 79 Va. 374, 377 (1884). Thus, in general intent statutes words such as "willfully" or "intentionally," without more, indicate only that the person must have intended to do the act and serve to distinguish that conduct from accidental (noncriminal) behavior or strict liability crimes. In Love v. State, 107 Fla. 376, 144 So. 843, 844 (1932), the Florida Supreme Court did not directly refer to "general" or "specific" intent, but in defining the type of intent requisite for statutory arson appeared to construe arson as a general intent crime: "A `willful' setting fire to or burning would be such an act consciously and intentionally, as distinguished from accidentally or negligently done... ." In 1979 the legislature omitted the word "maliciously" from the first degree arson statute.
In Myers v. State, Ind. App., 422 N.E.2d 745, 750, 751 (1981), the Indiana appellate court said that:
General criminal intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of a subjective desire to have accomplished such result,
and that the term "intentionally damages ... a dwelling ... requires no more than proof of general criminal intent" which is "the requisite intent necessary ... to distinguish the act ... from an accidental or negligent act having the same result." As the Washington appellate court said in State v. Nelson, 17 Wash. App. 66, 561 P.2d 1093, 1096 (1977), "[a] willful act is one done intentionally, not accidentally."
Specific intent statutes, on the other hand, prohibit an act when accompanied by some intent other than the intent to do the act itself or the intent (or presumed intent) to cause the natural and necessary consequences of the act. See State v. Gullett, 606 S.W.2d 796, 804 (Mo. Ct. App. 1980). For example, section 817.233, Florida Statutes (1981), defines a specific intent crime when it refers to "any person who willfully and with intent to injure or defraud the insuror sets fire to ... any building." (emphasis added) See also Myers v. State, 422 N.E.2d at 750, where the Indiana appellate court drew the same distinction under similar Indiana arson statutes as we do under sections 806.01(1) and 817.233. Accordingly, *248 a crime encompassing a requirement of a subjective intent to accomplish a statutorily prohibited result may be a specific intent crime. The existence of a subjective intent to accomplish a particular prohibited result, as an element of a "specific intent" crime, is perhaps most clearly evident in the crime of first degree, premeditated murder. See, e.g., Edwards v. State, 428 So.2d 357 (Fla. 3d DCA 1983). Other examples are burglary, which requires the intent to commit an offense in a structure or conveyance in addition to the intentional act of entering, section 810.02, Florida Statutes (1981), and kidnapping, which requires the subjective intent, inter alia, to hold for ransom in addition to the intentional act of confining, abducting or imprisoning, section 787.01, Florida Statutes (1981). Thus, to be a "specific intent" crime, a criminal statute which contains words of mental condition like "willfully" or "intentionally" should include language encompassing a subjective intent, for example, intent to cause a result in addition to that which is substantially certain to result from a statutorily prohibited act.
Accordingly, section 806.01(1) of the Florida arson statute, which says that a person who "willfully ... by fire ... damages ... any dwelling" is guilty of arson, defines a general intent crime. Damage to a dwelling is the natural consequence of setting a dwelling afire, and there is no additional wording of the statute which requires a subjective intent to cause the damage. See Rozier v. State, 402 So.2d 539 (Fla. 5th DCA 1981), which construed "willfully" to mean general intent under the trespass statute, section 801.08(1), Florida Statutes (1979).
Admittedly, our foregoing conclusion that arson under section 806.01(1) is a general intent crime cannot be drawn readily and easily from the bare wording of section 806.01. Candor compels the conclusion that whatever particular tests or distinctions are devised relative to "specific" and "general" intent, a perception of which type of intent the legislature meant in a particular statute is by no means always easy. Especially in states like Florida where the voluntary intoxication defense is not statutory, it is the province of the judiciary to establish guidelines or criteria, as we have endeavored to do here, for perceiving the type of intent meant by the legislature to be an element of a crime.
The difficulty of the distinction between these types of intent under various types of statutory wording points up that the "general" versus "specific" intent test itself is vulnerable to criticism. Applications of that test often do not produce consistent results in the case law.[1] However, our foregoing conclusion that arson is a general intent crime is consistent not only with the apparent rationale of Love v. State, supra, and the language of Rozier v. State, supra, but also with holdings under similar arson statutes in other states which contain the word "willfully" as an element of the crime. See State v. Nelson, supra; Myers v. State, supra; State v. Edmon, 28 Wash. App. 98, 621 P.2d 1310 (1981); State v. O'Farrell, 355 A.2d 396 (Me. 1976). See also State v. McLaughlin, 286 N.C. 597, 213 S.E.2d 238, 244 (1975) (arson is not a specific intent crime at common law). But see People v. Pearson, 74 Ill. App.2d 400, 220 N.E.2d 876, 878 (1966).
The distinction we draw under the foregoing guidelines might be emphasized by the following observations. The Washington appellate court in Edmon, supra, felt that specific intent is intent in addition to simply the intent to do a particular physical act. 621 P.2d at 1314. The Indiana appellate court in Myers said that "it is difficult to find courts or commentators today who will recognize as a specific intent crime any definition of the offense not containing the specific words `with intent to' effect a certain result." 422 N.E.2d at 750. See also 5 Am.Jur.2d Arson § 10 (1962). For discussions which we consider *249 to be consistent with our holding and the foregoing guidelines but which are also indicative of the recondite nature of the subject, see W. LaFave & A. Scott, supra, at § 28, and R. Perkins, supra, at 744-51, 762-74.
Our holding that voluntary intoxication is not a defense to arson represents what appears to us to be sound policy. Support for policy of this nature can be drawn from State v. Stasio, 78 N.J. 467, 396 A.2d 1129 (1979), which represents a thoughtful, extensive consideration of voluntary intoxication as a defense to numerous crimes. A number of the following bases for our holding as representing sound policy are indicated in Stasio:
(1) Intoxication, short of such a state as to render a person unconscious or incapacitated, can be said to have not destroyed a person's ability to form an intent, whether it be called general or specific intent. Although a person's mental abilities may be impaired and his inhibitions reduced, his brain still functions to stimulate actions by his body. At the least, there would be justification to find under those circumstances (intoxication short of unconsciousness or incapacitation) a probability that the person meant to do what he did and that, therefore, he should not be relieved or excused of the consequences thereof. The New Jersey Supreme Court in Stasio quoted Murphy, Has Pennsylvania Found A Satisfactory Intoxication Defense?, 81 Dick.L.Rev. 199, 208 (1977), as saying:
The great majority of moderately to grossly drunk or drugged persons who commit putatively criminal acts are probably aware of what they are doing and the likely consequences. In the case of those who are drunk, alcohol may have diminished their perceptions, released their inhibitions and clouded their reasoning and judgment, but they still have sufficient capacity for the conscious mental processes required by the ordinary definitions of all or most specific mens rea crimes.
396 A.2d at 1134. See also J. Hall, Intoxication and Criminal Responsibility, 57 Harv.L.Rev. 1045, 1053 (1977), saying that:
Rather obviously, harms committed by inebriates reveal not wild, disorganized, aimless, motor activity but conduct well adapted to attain specific goals.
(2) The issue here involves voluntary intoxication, and there is no basis in abstract fairness to not hold a person accountable for the results of what he voluntarily undertakes. To borrow from tort terminology, we are saying, in a general sense, that a person's own voluntary intoxication should not be considered a legal, supervening cause which shields him from the consequences of his conduct. As the Supreme Court of Mississippi said in an armed robbery case which placed Mississippi among at least six states which do not recognize voluntary intoxication as a defense to either specific or general intent crimes,
if a person casts off the restraints of reason and consciousness by a voluntary act, no wrong is done to him if he is held accountable for any crime which he may commit in that condition. Society is entitled to this protection.
McDaniel v. State, 356 So.2d 1151, 1159 n. 1, 1160-61 (Miss. 1978).
(3) By restricting the applicability of voluntary intoxication as a criminal defense, "the opportunities of false claims by defendants may be minimized and misapplication by jurors of the effect of drinking on the defendant's responsibility eliminated." Stasio, 396 A.2d at 1134.
(4) Of primary importance, a purpose of criminal law is to protect society from behavior that endangers the public safety. See section 775.012, Fla. Stat. (1981); Stasio, 396 A.2d at 1134. That purpose, and the deterrent objectives of criminal law, may be subverted by relieving a person from the consequences of his own conduct.
(5) In cases where the defense of voluntary intoxication is not allowed, the trial court nonetheless may consider such intoxication, in proper circumstances, as a mitigating factor at sentencing. There should be no reason why compulsive intoxication (dipsomania) *250 cannot receive adequate, if not superior, consideration by a trial judge who has the aid of background investigation into the life of a convicted defendant, as compared with the consideration a jury may be able to give in assessing guilt. Similar informed consideration may also be given by a trial judge to the other extreme: a totally inexperienced inebriate.
In Stasio the New Jersey Supreme Court joined commentators and courts who have given in-depth study to the subject and severely criticized the distinction between "general" and "specific" intent crimes as a criterion for whether or not the voluntary intoxication defense should apply. Quoting from J. Hall, General Principles of Criminal Law 142 (2d ed. 1960), the New Jersey Supreme Court said,
[t]he current confusion resulting from diverse uses of "general intent" is aggravated by dubious efforts to differentiate that from "specific intent".
396 A.2d at 1132. See also J. Hall, Intoxication and Criminal Responsibility, supra at 1064 which observed that "neither common experience nor psychology knows any such actual phenomenon as `general intent' that is distinguishable from `specific intent'." Stasio expressed the view that the specific versus general intent distinction is, at best, elusive and superfluous and, at worst, a possible vehicle for inconsistent and unjust results. Stasio alluded to a number of additional reasons for severely restricting the voluntary intoxication defense, a defense which did not exist under the English common law.
Yet, with seeming paradoxicalness, the Stasio court in dicta said that under the New Jersey arson statute, arson is a crime to which voluntary intoxication is a defense. However, that Stasio dicta is distinguishable from the instant case because the New Jersey arson statute, N.J. Stat. Ann., section 2C:17-1, in contrast to section 806.01, Florida Statutes (1981), provides that the crime of arson must be "purposely" done. Also, the New Jersey Supreme Court was applying, with apparent reluctance, a statutory voluntary intoxication defense under which "purposely" could be negatived by evidence of voluntary intoxication and which was to be under critical review by the New Jersey legislature. 396 A.2d at 1135-36. The significance (however indistinct) of the word "purposely" in this context is indicated in State v. O'Farrell, supra. In O'Farrell, 355 A.2d at 398, the Supreme Judicial Court of Maine refused to find that the term "willful" in the Maine arson statute made arson a specific intent crime because the statute did not require that the actual, subjective "purpose" of defendant be to damage a structure (or, for that matter, to produce the result of having a structure afire or burning, as contrasted, presumably, with the act of only placing a flame to a structure).
Although these semantic distinctions are so close as to be obscure, the Supreme Judicial Court of Maine and the Supreme Court of New Jersey felt that such terms were determinative: the presence of the word "purposely" in the statute was enough to convince the New Jersey court that the voluntary intoxication defense was applicable; the absence of such terminology served to convince the Maine court that the defense was not applicable. In any event, we would choose to reconcile that Stasio dicta with our holding here by adopting the rationale that the word "purposely" in the New Jersey Statute was construed to have a meaning consistent with our foregoing description of statutory wording which denotes a "specific intent" crime.
Our holding follows the much criticized "specific" versus "general" intent test because we are constrained by stare decisis to do so. But not inconsistent with the policy reasoning of Stasio, we add the following caveats. Under the following circumstances (which were not shown to exist in the case before us) voluntary intoxication may be a defense to a general intent crime: (a) when intoxication places an accused in an unconscious or wholly incapacitated state and his defense is that he did not physically accomplish the act of which he is accused; (b) when intoxication results *251 from medication which produces unexpected or bizarre results; and (c) when the result of intoxication is a fixed state of insanity, either permanent or intermittent, after the influence of the intoxicant has spent itself. See Stasio, supra, 396 A.2d at 1132. See also Cirack, supra at 709, and State v. McNally, 336 So.2d 713, 715 (Fla. 2d DCA 1976), as to the defense of insanity induced by intoxication.
To the extent that Russell v. State, 373 So.2d 97 (Fla. 2d DCA 1979), may appear to be inconsistent with our present holding, we recede from Russell. Russell found that the inclusion of the word "intentionally" in section 784.03, Florida Statutes (1977), made battery a specific intent crime to which voluntary intoxication was a defense. See also Harris v. State, 418 So.2d 416 (Fla. 1st DCA 1982) (absence of word "intentionally" in statute means lewd assault is a general intent crime, citing Russell). Upon reflection against the background of the foregoing considerations, including the language of Love v. State, supra, we find no realistic distinction, for the purpose of determining "general" and "specific" intent requirements, between the words "willfully" and "intentionally" in the context of those words as used in the battery and arson statutes. In fact, in reasoning why "willfully" in the Washington arson statute only meant that arson was a general intent crime, the Washington Court of Appeals in Nelson, 561 P.2d at 1096, said that "willful" means "that a fire must be set intentionally or by design, rather than accidentally or negligently."
The confusion which purely semantic distinctions can bring about in this area is further illustrated by the reliance of Rozier, supra, which found "willful" to mean general intent, upon State v. Buffett, 397 So.2d 1060 (Fla. 2d DCA 1981), which found the word "knowingly" unnecessary in an information alleging violation of the grand theft statute, section 812.014(2)(b), Florida Statutes (1979). We do not consider Buffett as being at odds with a conclusion under our foregoing guidelines that the grand theft statute describes a "specific intent" crime.
Also sharply indicative of the difficulties which can be generated by reliance, for the distinction between "general" and "specific" intent crimes, solely upon pure semantics, or dictionary definitions of single words, are two successive paragraphs in Words and Phrases, vol. 22, p. 36 (Perm. ed. 1958), immediately under the subheading of "Willfully or Voluntarily" which is under the general heading of "Intentionally." In the first paragraph the California appellate court in Lowen v. Finnila, 93 P.2d 257, 260 (Cal. App. 1939) (rev. on other grounds) 15 Cal.2d 502, 102 P.2d 520 (1940), is cited for the proposition that the term "willfully" is not synonymous with the term "intentionally." In the next paragraph the Missouri appellate court in Bindbeutal v. Street Railway Co., 43 Mo. App. 463, 470 (1891), is cited for the proposition that those terms are synonymous. Perhaps epitomizing the potential obscurities if an effort is made to distinguish "specific" from "general" intent on the basis of one word in a criminal statute and the obfuscation which often exists in discussions of the subject is A.F. Curtis, The Law of Arson, § 58 (1936). That treatise refers to "criminal intent" as an element of arson and says, without attempting to distinguish "general" from "specific" intent, that the intent requisite to the crime of arson may be, interchangeably, "intentionally," "willfully," "knowingly," or "purposely," but says further, in section 60, that the "willful" setting of a fire is to be distinguished from negligence. A reasonable conclusion to be drawn from perusal of the general law relative to whether particular words in various arson statutes denote "general" or "specific" intent is that the law has been at best unsettled and inconsistent.
But, regardless of the ambiguous background of the general law as described above, we construe statutes which are phrased like section 806.01(1) and contain the words "willfully" or "intentionally" to describe general intent crimes. On the other hand, specific intent crimes are described with the additional or different types of wording which we have described above as *252 denoting specific intent. Hopefully, the foregoing guidelines, and the foregoing discussion as to what might be viewed as the "general versus specific intent conundrum," will contribute more clarity and a degree of better predictability to Florida law, consistent with sound policy. At the least, by endeavoring to squarely face up to the difficulty and to provide relatively specific answers, we hope to have contributed to putting the problem into clearer focus, which is often the first step toward a problem's complete solution.
We recognize, as did the New Jersey Supreme Court in Stasio, that among the various criminal statutes, the particular mens rea, i.e., the types of particular criminal intent involved, may vary from crime to crime. In a sense, "there must be as many mentes reae as there are crimes." Stasio, 396 A.2d at 1133, quoting J. Hall, General Principles of Criminal Law, 142 (2d ed. 1960). Therefore, being cognizant of the difficulty of applying the foregoing guidelines to all criminal statutes, we believe a sound approach would be, for the purpose of determining the availability of the voluntary intoxication defense in cases of doubt as to whether other somewhat differently worded criminal statutes encompass "general intent" or "specific intent" crimes, to strictly construe statutes against a conclusion that they require "specific intent" as that term is defined in this opinion. Since the English common law did not recognize voluntary intoxication as a criminal defense, the foregoing approach to statutory construction would be consistent with the general principle that statutes in derogation of the common law are to be strictly construed.
By referring to the "English common law," which, of course, has been the foundation of the common law in this country, we are not merely referring to English law of the 1700's. Not only has voluntary intoxication continued in some respects to be no defense to even "specific intent" crimes in England, a proposal that "there should be a new offense of dangerous voluntary intoxication (an offense of strict liability)" received a degree of approval from three law lords of the House of Lords recently. G. Williams, Intoxication and Specific Intent, 126 New L.J. 658, July 1, 1976. However, apparently current English law pays at least some lip service to the "specific" versus "general" intent test, which also in that country is an "obscurity." Id. at 660.
The common law "apparently made no concession whatever because of intoxication, however, gross... ." J. Hall, Intoxication and Criminal Responsibility, supra at 1046. It appears that voluntary intoxication as a defense to "specific intent" crimes was initially adopted in this country to provide an "avenue to ... mitigation of punishment of grossly inebriated homicides." Id. at 1049. However, the "specific" versus "general" intent test, which is so inherently difficult to apply with consistency, is a clumsy vehicle by which to provide mitigation which can be afforded at sentencing when appropriate.
The shift in the United States away from the common law and towards leniency for inebriates was a "radical modification in the law ... in the nineteenth century." Id. at 1048. "As a more lenient attitude toward crime and punishment emerged and less emphasis was placed upon individual responsibility, the availability of voluntary intoxication as a defense was expanded by decision and by statute." State v. Gullett, 606 S.W.2d at 800.[2] The statutory voluntary intoxication defenses adopted as part of the Model Penal Code in Pennsylvania and Arkansas recently were repealed, indicating a return toward the common law in those states. Stasio, 396 A.2d at 1135. Virginia's view of voluntary intoxication as a potential defense has remained common law oriented. A. Murphy, Has Pennsylvania Found a Satisfactory Intoxication Defense? 81 Dick.L.Rev. 199, 206 (1977). *253 But the voluntary intoxication defense currently remains in place in the majority of jurisdictions, 22 C.J.S. Criminal Law §§ 66-68 (1961), despite resistance. J. Hall, Intoxication and Criminal Responsibility, supra at 1050.
The "specific" versus "general" intent test had its beginning in Florida jurisprudence many years ago. It has been recited numerous times. See, e.g., Simpson v. State, 81 Fla. 292, 87 So. 920 (1921); Allen v. State, 124 So.2d 741 (Fla. 1st DCA 1960); Ricard v. State, 181 So.2d 677 (Fla. 3d DCA 1966). Although its existence is consistent with the law of most states, see also 21 Am.Jur.2d Criminal Law §§ 129, 130 (1981), its applications, as indicated above, are anything but consistent.[3] We are not aware of any modern case in which the Florida Supreme Court has examined the test in light of the types of factors referred to herein, in Stasio, and in other authorities which we have cited.[4]
The increases in societal problems caused by both alcohol and drugs are well known. Concurrent with those increases have been additional commentary and study on inebriation as a criminal defense. See, e.g., J. Hall, Intoxication and Criminal Responsibility, supra; A. Murphy, supra; W. Roth, General vs. Specific Intent: A Time for Terminological Understanding in California, 7 Pepp L.Rev. 67 (1979); A. Gold, An Untrimmed "Beard": The Law of Intoxication as a Defense to a Criminal Charge, 19 Crim.L.Q. 34 (1976).
Perhaps in a proper case the Supreme Court of Florida may choose to clarify the situation by eliminating or modifying the test. The voluntary intoxication defense is not statutory in Florida, and we think there would be sound reasons for discarding the "general" versus "specific" intent test as a criterion relative to that defense, for basing a restriction on the voluntary intoxication defense upon the foregoing policy considerations, and for adopting the view that voluntary intoxication is not a defense to any crimes other than first degree premeditated murder except under the circumstances described in (a) through (c) above. Proposals of this nature are within the province, and a responsibility, of district courts of appeal. See Overton, District Courts of Appeal: Courts of Final Jurisdiction With Two New Responsibilities  An Expanded Power to Certify Questions and Authority to Sit En Banc, 33 U.Fla.L. Rev. 80, 84 (1983).

Voluntary Intoxication Is Not A Defense To First Degree (Felony) Murder.
Since a death occurred from the arson in this case, defendant was adjudicated guilty of a felony-murder. As we have said, although voluntary intoxication is a defense to first degree premeditated murder, voluntary intoxication is not a defense to arson. Defendant's specific argument is that voluntary intoxication should be a defense to arson, but we consider implicit within that argument the further argument that intoxication should be a defense to felony-murder.
When death occurs as a result of a felony, a question may remain as to whether a voluntarily intoxicated defendant should thereby be guilty of felony-murder. The argument could be: (1) in a felony-murder the intent to commit the felony is artificially substituted for the premeditation that is otherwise necessary for first degree murder; but (2) since the intent necessary for first degree premeditated murder is unquestionably "specific intent" to which voluntary intoxication is a defense, the intent to commit a felony which leads to the felony-murder doctrine should likewise be specific intent when the evidence shows voluntary intoxication. According to this argument, in cases involving voluntary intoxication there would not properly be a substitution of the intent to commit the *254 felony for the premeditation otherwise requisite to first degree murder unless the felony intent is deemed "specific intent."
We have considered this potential argument and note that dicta in Stasio, 396 A.2d at 1132, provides support based upon what the New Jersey Supreme Court refers to as "considerations of fairness." However, the felony-murder doctrine was not before the New Jersey Supreme Court in Stasio, and, on balance, we feel that the felony-murder doctrine should apply in the instant case without the defense of voluntary intoxication.
The foregoing argument is grounded upon asserted considerations of fairness to an accused. But, the felony-murder doctrine in this state is grounded upon the policy of deterrence of crime. The purpose of the doctrine, codified in section 782.04(1)(a), Florida Statutes (1981), is "to prevent the death of innocent persons likely to occur during the commission of certain inherently dangerous and particularly grievous felonies." State v. Williams, 254 So.2d 548, 550 (Fla. 2d DCA 1971).[5] That statute effectively substitutes the "mere intent to commit those felonies for the premeditated design to effect death which would otherwise be required in first degree murder... ." Id. at 551. We are not authorized to substitute a different intent, i.e., an intent like premeditation, for the intent to commit the felony, as we would be required to do if we were to adopt the foregoing argument. If defendant perpetrated the felony, he is responsible for the murder; voluntary intoxication is not a defense to the murder if it is not a defense to the felony. State v. Edwards, 224 Kan. 266, 579 P.2d 1209, 1213 (1978); State v. Rueckert, 221 Kan. 727, 561 P.2d 850, 856 (1977).
This conclusion is consistent with the policy reasons referred to above which underlie our holding that voluntary intoxication is no defense to arson. See also Jacobs v. State, 396 So.2d 1113 (Fla. 1981), a premeditated murder case involving "cumulative" felony murder evidence relative to a specific intent crime. In Jacobs the Florida Supreme Court, while agreeing with the trial court that defendant had not been intoxicated, noted that voluntary intoxication may in a proper case be a defense to the underlying felony; the court did not say that intoxication is a defense to felony-murder. A fair inference may be drawn from Jacobs that its foregoing dicta is at least consistent with our conclusion that voluntary intoxication is not a defense to any felony-murder, as such.
Any implications of harshness in applying the foregoing principles to the instant case may be lessened by the evidence that defendant was heard to say, on the evening of the crime, something about meaning to burn the building down. The building was an apartment building occupied by innocent people. In his confession defendant remembered igniting the curtains of his girl friend's apartment.

A Jury Instruction On Second Degree (Depraved Mind) Murder Is Necessary, If Supported By The Evidence, When Defendant Is Charged With First Degree (Felony) Murder.
Defendant's other contention on appeal is that the failure of the trial court to instruct the jury on second degree (depraved mind) murder was error. We agree.
Under the evidence concerning the nature of the actions of the defendant in setting the building afire, the jury, if so instructed, could have found defendant guilty of second degree, depraved mind murder under section 782.04(2), Florida Statutes (1981), which provides:
The unlawful killing of a human being, when perpetrated by an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular *255 individual, shall be murder in the second degree and shall constitute a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in s. 775.082, s. 775.083, or s. 775.084.
That is, the jury, if so instructed, could conceivably have exercised what the Florida Supreme Court referred to in State v. Abreau, 363 So.2d 1063, 1064 (Fla. 1978), as "its inherent pardon power." That so-called pardon power is a well recognized misnomer which generally means that a jury may, in a proper case, convict a defendant of a lesser offense when the jury finds that the acts of the defendant fit the statutory definitions of more than one offense.
Florida Rule of Criminal Procedure 3.490 provides circumstances under which that "pardon power" may be exercised. The rule states:
If the indictment or information charges an offense divided into degrees, the jury may find the defendant guilty of the offense charged or any lesser degree supported by the evidence. The judge shall not instruct on any degree as to which there is no evidence.
Of course, since a jury finding of guilty could only result from an instruction by the trial court as to an offense of which the defendant could be found guilty, the rule contemplates that the jury will be instructed by the trial court as to offenses referred to, and under the circumstances stated, in the rule. Those circumstances exist in this case. Second degree depraved mind murder is a lesser degree of felony murder under section 782.04, Florida Statutes (1981), and, as we have stated above, could be supported by the evidence in this case. Defendant was not indicted for second degree depraved mind murder, but rule 3.490 does not require that a defendant be charged with a lesser degree offense in order for the rule to apply.
Our construction of rule 3.490 follows from not only the plain wording of the rule but also from the supreme court's explanation of it. In Order and Opinion of Supreme Court of Florida Adopting Florida Standard Jury Instructions in Criminal Cases, Nos. 57,734 and 58,799 (Fla., April 16, 1981) (reprinted on pp. v-xiv of Florida Standard Jury Instructions (1981 ed.)), the court approved certain amendments to the Florida Rules of Criminal Procedure, including the current version of rule 3.490 which was in effect at the time of defendant's trial. The court referred to the former requirement, under Brown v. State, 206 So.2d 377 (Fla. 1968), that a jury be instructed on all lesser degrees of an offense and pointed out that rule 3.490 was being amended to require that the jury be so instructed only when there is evidence to support a finding of guilt of such lesser degrees. Id. at ix.
Accordingly, we must conclude that the jury in the case before us should have received an instruction permitting it to find defendant guilty of second degree depraved mind murder. Defendant is entitled to a new trial.
Upon retrial no voluntary intoxication instruction need be given relative to second degree (depraved mind) murder because that is a general intent crime within our foregoing guidelines. "[I]ntoxication does not excuse or mitigate any degree of unlawful homicide except murder in the first degree." State v. Kelly, 68 So.2d 351, 352 (Fla. 1953).
We recognize that the table (also referred to as "schedule") of lesser included offenses which is appended to the current Florida Standard Jury Instructions in Criminal Cases does not list second degree depraved mind murder as a lesser included offense under first degree (felony) murder. We also recognize that in its foregoing opinion approving the standard jury instructions, the supreme court said, "After its effective date of July 1, 1981 [modified to October 1, 1981], this schedule will be an authoritative compilation upon which a trial judge should be able to confidently rely." Id. at ix. However, later in its opinion the supreme court also said, "[N]o approval of these instructions by the Court could relieve the trial judge of his responsibility *256 under the law to charge the jury properly and correctly in each case as it comes before him." Id. at x.
The table is inconsistent with rule 3.490 and with the supreme court's foregoing interpretation of the rule. We can well understand the trial court's reliance on the table and, in fact, cannot say that if we had been in the trial judge's place, we would not have followed the table as he did. However, we cannot find that the table supersedes Rule of Criminal Procedure 3.490.
The subject of lesser included offenses under first degree (felony) murder is a difficult one with inherent, latent complexities far more extensive than the aspects which we have referred to above. We believe this is a case of first impression concerning the relationship between the foregoing portion of the table and rule 3.490. In the above-referenced opinion the supreme court asked for comments from the bench, bar, and other interested parties. It is our understanding that the subject is and has been under consideration by the committee appointed by the supreme court to recommend changes to the standard jury instructions. We assume that appropriate changes will be recommended to remedy what has appeared in this case to be a disparity between the foregoing table and rule.
The cause is reversed and remanded for a new trial on the first degree (felony) murder charge. The arson conviction shall be reinstated and shall stand. If upon retrial defendant is acquitted of first degree (felony) murder, defendant shall be sentenced on the arson conviction. If on retrial defendant is again convicted of first degree (felony) murder, he shall be sentenced on that conviction and the conviction for arson shall be vacated. This result is required by Bell v. State, 437 So.2d 1057 (Fla. 1983).
We certify to the Florida Supreme Court the following questions as being of great public importance:
1. Whether voluntary intoxication is a defense to arson or to any crime.
2. Whether voluntary intoxication is a defense to first degree (felony) murder.
3. Whether a jury instruction on second degree (depraved mind) murder is necessary, if supported by the evidence, when defendant is charged with first degree (felony) murder.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR A NEW TRIAL.
OTT, C.J., and HOBSON, BOARDMAN, SCHEB, RYDER, DANAHY and CAMPBELL, JJ., concur.
SCHOONOVER, J., concurs with result only.
GRIMES, J., concurs with opinion.
GRIMES, Justice, concurring.
As a member of the Supreme Court committee which recommended the 1981 revision of the Florida Standard Jury Instructions in Criminal Cases and chairman of the subcommittee which prepared the schedule of lesser included offenses, I concede that the schedule is inconsistent with Florida Rule of Criminal Procedure 3.490 as it relates to the lesser included offenses of first degree (felony) murder. This occurred because the schedule was originally adopted on the premise that degrees of an offense would be treated in the same manner as lesser included offenses. Thus, our committee contemplated that Florida Rule of Criminal Procedure 3.490 would be amended to provide that if the indictment or information charges an offense divided into degrees, the jury could find the defendant guilty of any lesser degree of the offense which as a matter of law is a necessarily included offense or any lesser degree of the offense charged in the indictment or information and supported by the evidence. This is reflected in the Comment on Schedule of Lesser Included Offenses (page 257) and in the Order and Opinion of Supreme Court of Florida Adopting Florida Standard Jury Instructions in Criminal Cases, Nos. 57,734 and 58,799 *257 (April 16, 1981) (page viii), both of which are reprinted in Florida Standard Jury Instructions in Criminal Cases. However, the new rule did not go as far as the committee originally intended. The amended Florida Rule of Criminal Procedure 3.490 as ultimately recommended and approved by the supreme court in 1981 only required that the lesser degree of offense be supported by the evidence and omitted any reference to it either being necessarily included or being charged in the indictment or information. Unfortunately, the table was not changed to coincide with the rule as adopted. Hence, this particular aspect of the schedule is inconsistent with the rule, and one or the other should be changed.
NOTES
[1] See Gentry v. State, 422 So.2d 1072, 1073 (Fla. 2d DCA 1982), aff'd 437 So.2d 1097 (Fla. 1983), holding that crimes which include "attempt" as an element are not necessarily specific intent crimes to which voluntary intoxication is a defense, but citing contrary authority.
[2] We do not close our minds to arguments on behalf of those whose criminal conduct involves alcoholically-reduced inhibitions. As to the view that voluntary intoxication should be a defense to both general and specific intent crimes, see State v. Gullett, 606 S.W.2d at 800, citing J. Hall, General Principles of Criminal Law 556 (2d ed. 1962).
[3] Further clouding an already cloudy subject is the recognition that "cases presenting instances of involuntary intoxication are `simply and completely nonexistent.'" State v. McNally, 336 So.2d at 715.
[4] Apparently the case creating the principle in Florida that voluntary intoxication is a defense to specific intent crimes was Garner v. State, 28 Fla. 113, 9 So. 835 (1891).
[5] State v. Perez, 382 So.2d 731 (Fla. 2d DCA 1980), in accordance with Mikenas v. State, 367 So.2d 606 (Fla. 1978), holds that the scope of the felony-murder doctrine is not limited to innocent persons but extends also to "any person."