*1186
 
 On Motion for Rehearing.
 

 POLEN, J.
 

 We deny the State’s motion for rehearing, but withdraw our slip opinion, dated March 16, 2011, and issue the following to correct a factual misstatement in our slip opinion. This correction has no bearing on our analysis or the result reached.
 

 Appellant, Richard Hentz, appeals the trial court’s order adjudicating him guilty of battery and sentencing him to 365 days imprisonment. Specifically, Hentz argues the trial court erred in denying his motion to suppress evidence because his phone conversation was tape recorded in violation of Florida’s wiretap statute. We hold that the trial court erred in denying Hentz’s motion to suppress and reverse the trial court’s order.
 

 Hentz was charged with sexual battery while victim was physically helpless to resist (Count I) and simple battery (Count II) and entered a negotiated plea agreement whereby the State agreed to nolle pros Count I and Hentz agreed to plead no contest to Count II. Following the trial court’s denial of Hentz’s motion to suppress evidence,
 
 [1]
 
 Hentz pled no contest to the battery charge. The State stipulated that the suppression of the photographic and video evidence at issue was dispositive.
 

 On March 6, 2008, Detective Jeremy Shepherd of the Indian River County Sheriffs Department took Hentz’s co-defendant, John Menzel, to the Sheriffs office to interview him regarding an alleged sexual battery which occurred at Menzel’s home and which involved the alleged victim, Menzel, and Hentz. Both Menzel and Hentz were asked if they would voluntarily come with the officers to be interviewed; Menzel agreed to go and Hentz refused.
 

 The audio and video recording equipment in the interview room were turned on approximately five or six minutes before Shepherd took Menzel into the room. This was standard procedure implemented to ensure that activating the recording devices would not be overlooked. About ten minutes elapsed between Menzel being seated in the interview room and Shepherd accompanying him. In the interim, Shepherd was in the tech room collaborating with other officers regarding the evidence already obtained and how the interview should be conducted. There were TV monitors in the tech room, and Shepherd noticed Menzel making a couple of phone calls. Shepherd and the other officers could not hear what was being said because the speakers in the tech room did not allow them to.
 

 Shepherd testified regarding the interview room Menzel was seated in when the video footage of his phone conversation was recorded. Shepherd described the room as pretty small and typically able to fit two or three chairs/individuals. No audio or video equipment is readily visible to the occupants of the room, and no one ever informed Menzel that there was recording equipment in the room or that his conversations would be recorded while he was awaiting his interview. Shepherd made sure that Menzel felt comfortable and knew he was not under arrest — he reiterated that Menzel could use the bathroom, got Menzel a glass of water to drink, and told Menzel that the door was unlocked. Shepherd wanted to ensure that Menzel knew he was not in custody so he would be comfortable speaking openly and honestly. Thus, this was not a custodial situation.
 

 Detective Parrish of the Indian River County Sheriffs Office testified that the microphone in the interview room is cam
 
 *1187
 
 ouflaged to look like a light switch and that it is inconspicuous. Parrish also stated that the video camera in the room is about the size of a tape cassette cover and is camouflaged to look like a motion sensor. Parrish knew from previous experiences that the recording equipment in the interview room is sensitive enough to record both sides of a phone conversation taking place between an individual in the interview room and someone on the other end of the phone. Still, Parrish did not warn Menzel of that fact when he realized Men-zel was having a conversation on his cell phone in the interview room and was potentially unaware of the fact that it was being recorded. Hentz testified that he was at his house when he had the conversation with Menzel.
 

 Menzel testified that the interview room was located inside the Sheriffs Administrative Building, that the individuals he saw walking around were wearing street clothes, and that the room itself looked like a small office. Menzel was never told the room was an interview room. Menzel informed Shepherd that he had phone calls to make to take care of some things. Shepherd never said anything regarding the recording devices in the room. The door to the room was shut, so Menzel believed he had privacy there to make his phone calls. While on the phone, Menzel kept his voice low so no one outside the room could hear the conversation. Menzel looked around the room to see if there was any recording or video equipment; he did not see any. On cross-examination, Men-zel acknowledged that the reason he was looking for recording equipment was because he knew there was a possibility that he might be recorded. Menzel did not think, however, that there could possibly be recording equipment in the room capable of intercepting both ends of a phone conversation.
 

 About one week later, Shepherd reviewed the video tape of his interview with Menzel. Shepherd could hear Menzel talking to Hentz about Hentz’s cell phone. Specifically, Shepherd could hear Hentz say to Menzel that he was “freaking out” when the officers were looking around because of the pictures and video on his cell phone and that if the officers had found the phone, Menzel would have been “f*cked.” Shepherd learned from the Indian River County computer forensics specialist that, even if Hentz deleted the photos and video from the cell phone, they could be recovered as long as not too much time had passed. Once photos and videos are deleted, they remain in the phone’s memory for a period of time until the memory runs out of space. Once the phone runs out of memory, new data overwrites the deleted data, and it is lost forever.
 

 Shepherd went to Hentz’s place of work, and told Hentz that his cell phone possibly contained evidence of a crime under investigation and that Shepherd would need to seize Hentz’s cell phone. Hentz repeatedly refused to give Shepherd his cell phone. Hentz worked in a Sprint cell phone store, and asked Shepherd to come back after Hentz was done working. But Shepherd was concerned that Hentz, working at a cell phone store, would figure out how to delete the data by the time Shepherd returned. The cell phone was ultimately seized. In the application for search warrant, Shepherd explained that Hentz had made statements during his phone conversation with Menzel which led Shepherd to believe that Hentz’s cell phone contained pictures and/or video evidence of the alleged sexual battery. Shepherd obtained a search warrant to search the phone’s contents. The search yielded incriminating photos and video footage implicating Hentz and Menzel in the crimes charged.
 

 
 *1188
 
 The tape of the intercepted phone conversation was played for the trial court. In it, Menzel called Hentz, told Hentz he would leave Menzel’s “thing” in his mailbox and asked whether Hentz knows why Menzel “did that.” Hentz replied:
 

 Yeah, yeah, yeah, definitely. That was a good idea. Definitely. I was freaked out when they were looking. I go (inaudible) sh*t (inaudible) my f*cking phone’s not here (inaudible) I got pictures and video on there (inaudible) f* eking phone (inaudible) or not.
 

 Defense counsel argued, in part, that the very evidence that provided Shepherd with probable cause to believe that the cell phone would provide evidence of a crime, i.e., Menzel and Hentz’s phone conversation, had been seized illegally. Specifically, counsel pointed out that Hentz’s statements. were made while Hentz was in his home, and thus, Hentz had a reasonable expectation of privacy which the officers violated by recording the conversation.
 

 The State argued that Hentz’s cell phone conversation with Menzel was not intentionally intercepted as required by the statute at issue. Here, the State argued that the fact that the officers did not even review the tape for six days shows that they had no intention of intercepting Menzel’s cell phone conversations while he was waiting to be interviewed. The State also pointed out that the DVD shows Men-zel looking around the interview room which suggests that Menzel knew there was a possibility there were cameras recording him. The trial court denied the motion to suppress evidence, and Hentz subsequently pled guilty to battery and was sentenced to 365 days in county jail. Hentz now timely appeals.
 

 On appeal, Hentz argues the trial court erred in denying his motion to suppress evidence because his phone conversation with Menzel was tape recorded in violation of Florida’s wiretap statute. The State responds that the motion was correctly denied based on the evidence adduced during the hearing.
 

 A trial court’s ruling on a motion to suppress is clothed with a presumption of correctness on appeal, and a reviewing court must interpret the evidence in a manner most favorable to sustaining the trial court’s decision.
 
 State v. Hebert, 8
 
 So.3d 393, 395 (Fla. 4th DCA 2009). Still, legal issues decided by the trial court are subject to de novo review.
 
 Id.
 

 Both Hentz and the State agree that section 934.03, Florida Statutes, is determinative in the present case. That section provides in pertinent part:
 

 (1) Except as otherwise specifically provided in this chapter, any person who:
 

 (a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication;
 

 (b) Intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:
 

 1. Such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
 

 2. Such device transmits communications by radio or interferes with the transmission of such communication;
 

 (c) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
 

 
 *1189
 
 (d) Intentionally uses, or endeavors to use, the contents of any -wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or
 

 (e) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication intercepted by means authorized by subparagraph (2)(a)2., paragraph (2)(b), paragraph (2)(c), s. 934.07, or s. 934.09 when that person knows or has reason to know that the information was obtained through the interception of such a communication in connection with a criminal investigation, has obtained or received the information in connection with a criminal investigation, and intends to improperly obstruct, impede, or interfere with a duly authorized criminal investigation;
 

 shall be punished as provided in subsection (4).[
 
 2
 
 ]
 

 § 934.03(1), Fla. Stat. (2008).
 
 [3]
 
 Section 934.06 states that no part of an intercepted communication may be received into evidence where the disclosure of that information would be a violation of the statute. § 934.06, Fla. Stat. (2008).
 

 The statute also provides the following definitions which are relevant to this court’s review:
 

 (1)“Wire communication” means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception including the use of such connection in a switching station furnished or operated by any person engaged in providing or operating such facilities for the transmission of intrastate, interstate, or foreign communications or communications affecting intrastate, interstate, or foreign commerce.
 

 (2) “Oral communication” means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any public oral communication uttered at a public meeting or any electronic communication.
 

 (3) “Intercept” means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.
 

 § 934.02(1-3), Fla. Stat. (2008). Finally, as the Florida Supreme Court has explained, the statute protects only oral communications which one reasonably expects to be private:
 

 The statute protects only those “oral communications” uttered by a person exhibiting an expectation of privacy
 
 under circumstances reasonably justifying such an expectation.
 

 This expectation of privacy does not contemplate merely a subjective expectation on the part of the person making the uttered oral communication but rather contemplates a reasonable expectation of privacy. A reasonable expecta
 
 *1190
 
 tion of privacy under a given set of circumstances depends upon one’s actual subjective expectation of privacy
 
 as well as whether society is prepared to recognize
 
 this expectation as reasonable.
 

 State v. Inciarrano,
 
 473 So.2d 1272, 1275 (Fla.l985)(emphasis in original).
 

 The arguments in the present case focus primarily on two issues: (A) whether the officers intentionally intercepted the phone conversation, and (B) whether Hentz had a reasonable expectation that his phone conversation was private.
 
 [4]
 

 A.
 
 Whether the interception was intentional.
 

 Hentz asserts that the interception was intentional because the officers knew from previous experience that the recording equipment was sensitive enough to pick up statements made by the individual on the other end of the phone, knew the recording equipment was on, and allowed Menzel to continue making cell phone calls. According to Hentz, “[Ijntent is not only a purposeful design to effect an outcome, but also a willful blindness to an otherwise obvious fact.” The State counters that the interception was not intentional because, although the officers intended to activate the recording equipment to ultimately record the interview, the officers never intended to intercept the phone conversations Menzel took part in while awaiting his interview. Neither party cites any case law to assist this court in determining whether the officers
 
 intentionally
 
 intercepted the phone conversation.
 

 Insofar as section 984.03 is a criminal statute, whether the officers intentionally intercepted the conversation, within the meaning of the statute, turns on whether the statute contemplates general intent or specific intent.
 

 A “general intent” statute is one that prohibits either a specific voluntary act or something that is substantially certain to result from the act (e.g., damage to a building is the natural result of the act of setting a building afire). A person’s subjective intent to cause the particular result is irrelevant to general intent crimes because the law ascribes to him a presumption that he intended such a result... .Thus, in general intent statutes words such as “willfully” or “intentionally,” without more, indicate only that the person must have intended to do the act and serve to distinguish that conduct from accidental (noncriminal) behavior or strict liability crimes....
 

 [[Image here]]
 

 Specific intent statutes, on the other hand, prohibit an act when accompanied by some intent other than the intent to do the act itself or the intent (or presumed intent) to cause the natural and necessary consequences of the act....Thus, to be a “specific intent” crime, a criminal statute which contains words of mental condition like “willfully” or “intentionally” should include language encompassing a subjective intent, for example, intent to cause a result in addition to that which is substantially certain to result from a statutorily prohibited act.
 

 Linehan v. State,
 
 442 So.2d 244, 247-48 (Fla. 2d DCA 1983).
 

 The statute at issue here is a general intent statute in that it prohibits the interception of oral communication and makes no mention of a subjective intent “to cause a result in addition to that which is substantially certain to result” from the
 
 *1191
 
 interception. There is no doubt that the officers had a general intent to intercept Menzel’s oral communication while he was in the room. The more difficult issue is whether there was an intent to intercept Hentz’s statements made during a phone conversation with Menzel. In light of the officers’ knowledge that the recording equipment was on and was sensitive enough to intercept the other end of a phone conversation, the officers in the present case did intentionally intercept Hentz’s oral communication within the meaning of the statute at issue.
 

 B.
 
 Whether Hentz had a reasonable expectation of privacy in the phone conversation.
 

 Hentz argues that he had a reasonable expectation of privacy in the phone conversation because he was in his home during the conversation, did not direct his communications to multiple people, and did not know that Menzel was sitting in an interview room at the time of the conversation.
 

 Hentz relies on
 
 State v. Mozo,
 
 655 So.2d 1115 (Fla.1995), to support his proposition that, because he was in his home at the time of the phone conversation, he had a reasonable expectation of privacy. In
 
 Mozo,
 
 police officers used a scanning device to scan frequencies at random in hopes of intercepting information regarding illegal activity.
 
 Id.
 
 at 1115. The officers intercepted numerous phone calls, including one in which a woman was communicating with an unidentified male via cordless phone about the availability of “powder” and “rocks.”
 
 Id.
 
 at 1116. The police determined which apartment the calls were originating from and, after further surveillance, the police obtained a search warrant for the apartment.
 
 Id.
 
 After being charged with various drug charges, the defendants moved to suppress evidence seized from their home on the grounds that the search resulted from the government’s illegal interception of private telephone calls in their home.
 
 Id.
 

 The trial court denied the motion to suppress, and this court reversed on the basis that the interception was in violation of article 1, sections 12 and 23 of the Florida Constitution.
 
 Id.
 
 This court held that chapter 934, Florida Statutes, did not apply to oral communications conducted over a cordless phone.
 
 Id.
 
 The Supreme Court agreed with our decision to reverse but explicitly held that “oral communications conducted over a cordless phone within the privacy of one’s own home are protected by Florida’s Security of Communications Act.”
 
 Id.
 
 Regarding the reasonableness of the Mozos’ expectation of privacy in their telephone conversations, the court explained:
 

 The actual “interception” of a communication occurs not where such is ultimately heard or recorded but where the communication originates.
 
 See United States v. Nelson,
 
 837 F.2d 1519 (11th Cir.),
 
 cert. denied,
 
 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 58 (1988). Here, the “intercepted” conversations originated within the Mozos’ home and thus exhibited the required expectation of privacy demanded by section 934.02(2). It is a well-established principle that citizens are guaranteed a reasonable expectation of privacy in their own home.
 
 See
 
 U.S. Const, amend. IV; Art. I, §§ 12, 23, Fla. Const. “The State’s interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.”
 
 Carey v. Brown,
 
 447 U.S. 455, 471, 100 S.Ct. 2286, 2296, 65 L.Ed.2d 263 (1980). Therefore, having determined that oral communications occurring in a citizen’s home justify an expectation that such communication is
 
 *1192
 
 not subject to interception, we conclude that the interception of these cordless phone communications which originated within the Mozos’ home violated Florida’s Security of Communications Act, chapter 934, Florida Statutes (1991).
 

 Id.
 
 at 1117.
 

 The State asserts that the phone call in the instant case “originated” at the police station from which Menzel called Hentz. Thus, according to the State, the call originated from the police station where Men-zel had no reasonable expectation of privacy, and the phone conversation was not within the ambit of the statute. Perhaps for this reason, much of the focus below was on whether Menzel had a reasonable expectation of privacy in the interview room at the Sheriffs Office Administrative Building. However, Hentz’s statements provided the basis for Shepherd’s Probable Cause Affidavit and ultimately resulted in the search of his cell phone. Therefore, the proper focus is on whether Hentz had a reasonable expectation of privacy.
 

 Moreover, the
 
 Mozo
 
 opinion holds that the interception of an oral communication occurs where the
 
 communication
 
 originates — not where the phone call originates or where the communication was initiated. Here, the communication at issue — Hentz’s statements regarding pictures and video on his cell phone — originated in his home where he was sitting during the cell phone conversation with Menzel.
 

 As the State points out, Hentz did know that Menzel was at the police station when the conversation took place. Hentz specifically asked Menzel whether he had gone to the station yet, and Menzel replied, “I’m sitting here waiting.” Thus, factually, this case is certainly distinguishable from
 
 Mozo.
 
 But in light of the
 
 Mozo
 
 opinion and the protection afforded communications that occur from within one’s home, Hentz had a subjective expectation of privacy in his statements and his expectation was one society accepts as reasonable.
 

 Reversed.
 

 HAZOURI and CIKLIN, JJ„ concur.
 

 [1]
 

 . Co-defendant Menzel joined in Hentz’s motion to suppress evidence. Accordingly, both Menzel and Hentz offered evidence and testimony in support of the motion to suppress.
 

 [2]
 

 . Subsection (4) provides that a violation of subsection (1) is a third degree felony. § 934.03(4)(a), Fla. Stat. (2008).
 

 [3]
 

 . The statute does provide an exception for interception of communication by law enforcement officers where either the officer is a party to the intercepted communication or has the prior consent of a party to the communication. § 934.03(2)(c), Fla. Stat. (2008). However, this exception does not apply in the instant case.
 

 [4]
 

 . We emphasize that whether or not Menzel had a reasonable expectation of privacy is irrelevant for our analysis; it is only Hentz’s perspective that we address.