# Supreme Court of Florida

_____

No. SC17-2011
_____

**ANTOINE E. MCCLOUD,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

December 20, 2018

LEWIS, J.

This case is before the Court for review of the decision of the Second

District Court of Appeal in *McCloud v. State*, 224 So. 3d 842 (Fla. 2d DCA 2017).

The district court certified that its decision is in direct conflict with the decision of

the First District Court of Appeal in *McCray v. State*, 171 So. 3d 831 (Fla. 1st

DCA 2015).  *McCloud*, 224 So. 3d at 847.  We have jurisdiction.  *See* art. V,

§ 3(b)(4), Fla. Const.  This conflict concerns the proper interpretation of Florida's

witness tampering statute: section 914.22, Florida Statutes (2014).  For the reasons

that follow, we approve the decision below and disapprove of the First District's

precedent discussed in *McCray*.

# FACTUAL AND PROCEDURAL BACKGROUND

This case presents a pure question of statutory interpretation; however, to the extent that the facts are relevant, the Second District sufficiently recited them:

> The incident that gave rise to the witness tampering charge occurred on the morning of March 8, 2015. Mr. McCloud awoke to noise made by his six-year-old daughter [(the younger daughter)] in the living area of his home. Mr. McCloud began yelling at his daughter to play more quietly and threatened to spank her. The victim, who was the child's mother and Mr. McCloud's wife, also awoke and told Mr. McCloud to calm down. Upon being told to calm down, Mr. McCloud became angry, approached the victim, who was still in bed, and screamed at her to stop interfering with his attempts to discipline their daughter.

> The victim testified that Mr. McCloud then pushed her in the chest and poked her in the forehead about two to three times. After he stopped pushing her, Mr. McCloud then left the bedroom. Upon his exit, the victim began shouting to her twelve-year-old daughter [(the older daughter)] to call for help. Mr. McCloud returned to the bedroom with a gun in his hand. He threatened to kill the victim if she ever took the children from him. Mr. McCloud then left the bedroom again and approached the older daughter, who was watching the incident unfold from the hallway outside of the bedroom. The victim testified that Mr. McCloud took the older daughter's cell phone out of her hands and said, "Are you going to call those people on me? Are you telling my daughter to call those people on me?" The victim also testified that at some point during the incident, Mr. McCloud took her cell phone and threw it to the ground, causing the battery to fall out.

> The older daughter testified that upon hearing the victim shout for help, she left her bedroom and observed from the hallway that Mr. McCloud was on top of the victim, apparently holding her arms down for about twenty seconds. She also saw that the victim's phone was broken on the floor. The older daughter also testified that as she was standing in the hallway, Mr. McCloud approached her and grabbed her cell phone out of her hands. The older daughter stated that upon

seizing her cell phone, Mr. McCloud stated, "You can't call the cops on me. You can't get my kids to call the cops on me."

Mr. McCloud took the stand in his own defense at trial. He testified that he never hurt the victim and that he took the phone from his older daughter as a form of punishment for her failure to clean the house. He further testified that at the time he took the phone from his older daughter, the phone's screen was black and that there was no phone call in progress.

At the close of the State's case, the defense moved for a judgment of acquittal. Defense counsel argued that the evidence was insufficient to sustain a conviction for witness tampering because under *McCray* [171 So. 3d at 832], the State was required to and failed to present evidence that "the victim [or witness] was attempting to contact law enforcement during the time of the incident." The trial court denied the motion, finding that the State's evidence was sufficient to present the case to the jury. The jury returned a verdict finding Mr. McCloud guilty of tampering with a witness as charged. It also found him guilty of simple battery, a misdemeanor in the first degree, and assault, a misdemeanor in the second degree.[n.1]

> [n.1] Mr. McCloud does not challenge his convictions
> for battery and assault.

*McCloud*, 224 So. 3d at 843-44.

McCloud appealed the denial of motion for judgment of acquittal to the Second District, relying upon the First District's precedent articulated in *McCray*. *Id.* The Second District rejected *McCray*, certified conflict with the decision, and affirmed McCloud's conviction for witness tampering. *Id.* at 847.[1]

---

1. Unrelatedly, the Second District vacated McCloud's sentence, remanding for a new sentencing hearing due to scrivener's and computation errors in the judgment and sentencing scoresheet. *McCloud*, 224 So. 2d at 844, 847.

This review follows.

## ANALYSIS

The issue central to the certified conflict is whether section 914.22(1)(e), Florida Statutes, requires the State to demonstrate that a witness attempted to contact law enforcement to prove its case in chief on witness tampering. Based on the plain language of the statute, we conclude that the statute does not designate an attempt to contact law enforcement as an element of the crime; accordingly, the Second District's interpretation below was correct.

### Standard of Review and Legal Standard

This Court undertakes de novo review for questions of statutory interpretation. *E.g.*, *Polite v. State*, 973 So. 2d 1107, 1111 (Fla. 2007). The purpose of this endeavor is to effectuate the Legislature's intent because "legislative intent is the polestar that guides a court's statutory construction analysis." *State v. J.M.*, 824 So. 2d 105, 109 (Fla. 2002); *e.g.*, *In re Ginsberg's Estate*, 50 So. 2d 539, 542 (Fla. 1951) ("It is a fundamental rule in statutory construction that the intention of the Legislature in the enactment of a statute should be ascertained and effectuated."); *Getzen v. Sumter Cty.*, 103 So. 104, 107 (Fla. 1925) ("The intent of organic or statutory provisions is the essence of the law."); *State v. Patterson*, 65 So. 659, 660 (Fla. 1914) ("[L]egislative intent . . . is the essence and vital force of the law."); *State v. Atlantic Coast Line R.R. Co.*, 47

So. 969, 984 (Fla. 1908) ("In construing and applying a duly enacted statute, the valid legislative intent is the guiding star."); *Curry v. Lehman*, 47 So. 18, 20 (Fla. 1908) ("[T]he primary rule of construction is to ascertain and give effect to that intent."); 48A Fla. Jur. 2d, *Statutes* § 116 (2014) ("The primary rule of statutory construction, and the ultimate goal in construing a statutory provision, is to give effect to legislative intent." (footnotes omitted)); 2A Norman J. Singer, *Statutes and Statutory Construction* § 45:5 (7th ed. 2014) ("[T]he essential idea that legislative will governs decisions on statutory construction has always been the test most often declared by courts."); *see also Heydon's Case*, (1584) 76 Eng. Rep. 637 (Exch.) (detailing the traditional common law rule of legislative intent guiding statutory construction). In order to "discern legislative intent, this Court looks first to the plain and obvious meaning of the statute's text." *Smith v. State*, 204 So. 3d 18, 21 (Fla. 2016) (quoting *W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So. 2d 1, 9 (Fla. 2012)). If the statute is "clear and unambiguous," then this Court does not look beyond the plain language or employ the rules of construction to determine legislative intent—it simply applies the law. *Gaulden v. State*, 195 So. 3d 1123, 1125 (Fla. 2016) (quoting *Borden v. E.-Eur. Ins. Co.*, 921 So. 2d 587, 595 (Fla. 2006)).[2]

---

2. Our well-established polestar precedent is supported by *Holly v. Auld*, 450 So. 2d 217 (Fla. 1984), which assumes that legislative intent is the guiding principle of our statutory interpretation analyses. *Id.* at 219 ("[I]t is not the court's

**Section 914.22(1)(e), Florida Statutes**

In pertinent part, the witness tampering statute is clear and unambiguous:

>    (1)  A person who knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, or offers pecuniary benefit or gain to another person, with intent to cause or induce any person to:

>    . . . .

---

duty or prerogative to modify or shade clearly expressed legislative intent in order to uphold a policy favored by the court."); *id.* ("The preamble and language of that enactment readily reveal the legislature's intent and its policy reasons."); *id.* at 220 ("Neither the language of the statute, nor the legislative intent discernable therefrom, admits of an interpretation which would limit the discovery privilege."). Also, the point of law often cited in *Holly* actually comes from *A.R. Douglas, Inc. v. McRainey*, 137 So. 157 (Fla. 1931). There—nearly 100 years ago—we stated essentially the exact standard used here, beginning with intent as the polestar:

>    The intention and meaning of the Legislature must primarily be determined from the language of the statute itself and not from conjectures aliunde. When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.

*Id.* at 159. Much of the disagreement on this point is a matter of semantics, better left for law review articles' "preoccupation with the choice between textualist and intentionalist theories of interpretation." *See* William S. Blatt, *Missing the Mark: An Overlooked Statute Redefines the Debate Over Statutory Interpretation*, 64 U. Miami. L. Rev. 641, 662 (2010). Many years ago, we correctly decided not to wade into that murky debate by collapsing the two into one. When the Legislature has clearly and unambiguously spoken, the resulting statute demonstrates legislative intent and we simply apply the plain language. *E.g.*, *Streeter v. Sullivan*, 509 So. 2d 268, 271 (Fla. 1987); *State v. Egan*, 287 So. 2d 1, 4 (Fla. 1973). And Florida judges are savvy enough to apply that simple, traditional rule like their predecessors have done for years.

(e) Hinder, delay, or prevent the communication to a law enforcement officer or judge of information relating to the commission or possible commission of an offense . . . .

. . . .

commits the crime of tampering with a witness, victim, or informant.

§ 914.22(1)(e), Fla. Stat. To prove witness tampering under that plain language, therefore, the State must demonstrate that a defendant knowingly acted, threatened, or attempted either, with the specific intent to "[h]inder, delay, or prevent" a victim's communication to law enforcement with regard to a criminal offense. *Id.*; *see Taffe v. State*, 232 So. 3d 431, 433 (Fla. 4th DCA 2017); *McCloud*, 224 So. 3d at 846; *Gill v. State*, 622 So. 2d 92, 93 (Fla. 2d DCA 1993); *see also McAlpin v. Crim. Justice Standards & Training Comm'n*, 155 So. 3d 416, 420 (Fla. 1st DCA 2014); *cf. State v. Gray*, 435 So. 2d 816, 820 (Fla. 1983) (holding that the predecessor to this statute did not create a specific intent crime).[3] The conflict here relates to whether the statute further requires the State to establish that the witness attempted to contact law enforcement during the commission of the underlying criminal offense. *McCloud*, 224 So. 3d at 845. The Second District held below that the plain language of the statute does not include a witness's attempt to contact law enforcement as an element of the crime, *id.* at 845-46; whereas the First

---

3. Section 914.22, Florida Statutes, applies to witnesses, victims, and informants alike. We use the terms interchangeably below.

District, on nearly identical facts, came to the opposite conclusion in *McCray*, 171 So. 3d at 832. Based on the plain language of section 914.22(1)(e), Florida Statutes—which is clear and unambiguous—we conclude that the First District misread the statute and improperly added an element to the offense in contravention of the plain language.

Nothing in the plain language of section 914.22(1)(e) indicates that the elements of witness tampering include a witness's attempt to contact law enforcement, either during or after the commission of the offense. *See* § 914.22(1)(e), Fla. Stat.; *Taffe*, 232 So. 3d at 434; *McCloud*, 224 So. 3d at 846. Rather, the plain language focuses on a defendant's actus reus and mens rea; it does not require any action on the part of a victim. "It is axiomatic that where the legislature has defined a crime in specific terms, the courts are without authority to define it differently." *State v. Jackson*, 526 So. 2d 58, 59 (Fla. 1988). Instead of following this basic rule, the First District redefined the crime of witness tampering, adding an additional element. *See McCray*, 171 So. 3d at 832. That was error.

McCloud attempts to salvage the First District's interpretation by looking to section 914.22's "knowingly" requirement for support. Without a witness's attempt to contact the police, as his contention goes, "the State is unable to show that a defendant had the intent to knowingly hinder, delay, or prevent

communication about a crime to law enforcement." Initial Br. 12. Yet McCloud

misreads the statute by rearranging its words. The Legislature did not define

witness tampering with "knowingly" modifying the prohibited result of hindering,

delaying, or preventing communication with law enforcement, as McCloud argues.

The plain language of section 914.22(1)(e) makes clear that "knowingly" modifies

acts of intimidation, threats, or physical force (among others). § 914.22(1)(e), Fla.

Stat. This construction establishes that the act itself must be committed with

"actual knowledge" or "voluntarily and intentionally." *See Shaw v. State*, 510 So.

2d 349, 351 (Fla. 2d DCA 1987); *see also O'Neill v. State*, 684 So. 2d 720, 722 n.5

(Fla. 1996). Because witness tampering is a specific intent crime, however, the

statute separately requires that the knowing act be done "with intent to cause or

induce" a witness to "[h]inder, delay, or prevent the communication" with law

enforcement. § 914.22(1)(e), Fla. Stat.[4] Clearly, the knowledge requirement does

---

4. A specific intent crime is "an act when accompanied by some intent other than the intent to do the act itself or the intent (or presumed intent) to cause the natural and necessary consequences of the act." *Linehan v. State*, 442 So. 2d 244, 247 (Fla. 2d DCA 1983), *approved in result*, 476 So. 2d 1262 (Fla. 1985), *receded from on other grounds by Coicou v. State*, 39 So. 3d 237 (Fla. 2010); *see, e.g.*, *Frey v. State*, 708 So. 2d 918, 919 (Fla. 1998); *Hentz v. State*, 62 So. 3d 1184, 1190 (Fla. 4th DCA 2011); *see also* Eric A. Johnson, *Understanding General and Specific Intent: Eight Things I Know For Sure*, 13 Ohio St. J. Crim. L. 521, 525 (2016) ("[A] crime will qualify as a specific-intent offense if it requires the state to prove that the defendant intended to 'achieve some additional consequence' beyond the commission of 'the proscribed act.' " (quoting *People v. Hood*, 462 P.2d 370, 378 (Cal. 1969))); 21 Am. Jur. 2d, *Criminal Law* § 114 (2018) ("A 'specific intent' crime is one in which an act was committed voluntarily and

not apply to a defendant's intent to bring about the prohibited result of obstructing justice because those are two separate elements of the crime. By misreading section 914.22(1)(e), Florida Statutes, McCloud attempts to obfuscate the fact that it was his actions and intent to tamper—not the victim's or older daughter's responses—which were determinative here. Thus, McCloud's contentions cannot palliate the First District's misreading of the statute's plain language.

**The Certified Conflict**

In *McCray*, the First District addressed a similar fact pattern where the defendant broke the victim's phone during the commission of a battery. 171 So. 3d at 832. Interpreting the plain language of section 914.22, the court stated that "it [wa]s necessary to present evidence that the victim was attempting to contact law enforcement during the time of the incident to support a conviction under this statute." *Id.* There was no explanation for this interpretation; rather, the First District merely applied its earlier reading of the statute. *Id.* (citing *Thompson v. State*, 153 So. 3d 996, 997 (Fla. 1st DCA 2015)). The court reasoned that the victim's testimony that she was "trying to call somebody" when the defendant broke her phone was insufficient to establish that she was attempting to contact law

_____

purposely with specific intent to do something the law forbids; the defendant acts not only with knowledge of what he or she is doing, but also does so with the objective of completing some unlawful act.").

- 10 -

enforcement. *Id.* Due to the lack of evidence under its reading of the statute, the district court reversed the witness tampering conviction. *Id.* at 833.

Likewise, *Thompson*—which formed the basis of the First District's interpretation in *McCray*—followed the same format, except it cited *Longwell v. State*, 123 So. 3d 1197, 1198 (Fla. 1st DCA 2013), as support. *Thompson*, 153 So. 3d at 997. *Longwell* represented the first interpretation of the statute to include a witness's attempt to contact law enforcement as an element of the crime. 123 So. 3d at 1198. The First District there also failed to explain why it read this requirement into the plain language. *Id.* Instead, the court quoted the statute, then it inexplicably stated its conclusion:

> Based on our review of the record, we conclude that no evidence was presented establishing that [the victim] was attempting to contact law enforcement during the altercation with [the defendant]. The State accurately and candidly indicated that the evidence presented did not establish a prima facie case of guilt as to the tampering charge. Because [the victim] denies calling 911, and because no witnesses testified that [the victim] was attempting to contact law enforcement during the altercation, there is insufficient evidence as to an essential element of the crime.

*Id.* Nowhere in the First District's analysis is there any explanation for reading an additional element of the crime into section 914.22. *See id.* Notably, however, the *Longwell* court noted the State's concession that it failed to make a prima facie case for witness tampering. *Id.* Moreover, the victim there testified that her phone broke during the altercation because she dropped it, which contradicted her earlier

statement that the defendant smashed the phone. *Id.* at 1197. Regardless of the

First District's interpretation of the statute, the victim's testimony in *Longwell*

controverted a witness tampering charge. Because the victim testified that her

phone broke when she dropped it—and no other evidence was offered to

demonstrate prevention of communication—there was no evidence of the

defendant committing an act with the specific intent to hinder, prevent, or delay the

victim's communication with law enforcement; therefore, the defendant did not

violate the statute. *See id.*; *see also* § 914.22(1)(e), Fla. Stat. Thus, despite the

First District's misinterpretation, the court likely reached the correct result in

*Longwell*, albeit for the wrong reason.[5]

Conversely, the Second District below rejected the First District's precedent.

*McCloud*, 224 So. 3d at 845-46. According to the Second District, that

interpretation "add[ed] another element to a crime that is otherwise clearly

---

5. Over the summer, it appears that the First District recognized its error and attempted to walk back its precedent. *Frazier v. State*, 250 So. 3d 794, 797-99 (Fla. 1st DCA 2018). However, its previous holdings were clear, and we must correct that misinterpretation. *See McCray*, 171 So. 3d at 833 ("Because there was no evidence that [the victim] was attempting to contact law enforcement, the trial court erred in denying [the defendant's] motion for judgment of acquittal. *See Longwell* [123 So. 3d at 1198]. We, therefore, REVERSE the conviction for tampering with a victim or witness."). Moreover, the statute is not a general rule that changes based on the facts of the case, as the First District suggests, *Frazier*, 250 So. 3d at 799; section 914.22, Florida Statutes, is a clear, unambiguous, and fixed definition of a crime that we must apply uniformly.

defined." *Id.* at 846. Instead, the district court held that the plain language of section 914.22(1)(e) "requires the State to prove that the accused knowingly took some action with the intent to hinder, delay, or prevent the witness from communicating information to law enforcement '*relating to* [not during] the commission or possible commission of an offense.' " *Id.* (alteration in original) (quoting § 914.22(1)(e), Fla. Stat.). The court reasoned that *Longwell*, and its progeny, "contravenes the plain meaning of the statute," "lead[s] to absurd results," and "severely restricts the statute's applicability." *Id.*

Under its correct reading of the statute's plain language, the Second District concluded that the State presented competent, substantial evidence to support McCloud's conviction for witness tampering. *Id.* Specifically, the testimony established that McCloud took the older daughter's cell phone and smashed the victim's phone. *Id.* As he grabbed the older daughter's phone, McCloud declared, "You can't call the cops on me. You can't get my kids to call the cops on me." *Id.* At some point, McCloud retrieved a handgun and threatened to kill the victim. *Id.* at 843. Based on that evidence, the district court concluded that McCloud "knowingly used physical force, intimidation, or a threat with the intent to hinder or prevent a communication by either the victim or the older daughter to law

- 13 -

enforcement regarding the assault and battery." *Id.* at 846; *see* § 914.22(1)(e) Fla. Stat.[6]

More recently, the Fourth District adopted the interpretation below. *Taffe*, 232 So. 3d at 433 ("We reject this authority [(*McCray*, *Thompson*, and *Longwell*)] and instead adopt the Second District's holding in *McCloud*."). Similar to the Second District's approach in *McCloud*, the Fourth District properly applied the statute as written:

> In our view, there is simply nothing within the plain language of the witness tampering statute requiring the State to prove the witness was attempting to contact law enforcement when the threat was made. . . . Indeed, as outlined by the Second District, adopting the logic of the First District in this case would lead to an "absurd result."

*Id.* at 434.

In addition to its misinterpretation of the plain language, the First District's precedent does in practice lead to absurd results. One narrow exception to the plain meaning rule may be "made where a literal interpretation of a statute yields absurd results." *Jackson*, 526 So. 2d at 59. Yet, in this scenario, the First District ignored the plain language to deploy a reading that yields absurd results rather than avoids them. *See Taffe*, 232 So. 3d at 434; *cf. Warner v. City of Boca Raton*, 887 So. 2d 1023, 1033 n.9 (Fla. 2004) ("[A] statutory provision should not be

---

6. The Second District reiterated its position in *Williams v. State*, 246 So. 3d 529, 530-31 (Fla. 2d DCA 2018).

construed in such a way that it renders the statute meaningless or leads to absurd results."). Under the First District's interpretation of section 914.22, "a defendant could never be held criminally liable for witness tampering so long as the defendant ensures that the witness is unable to contact law enforcement at the time the threats are made." *Taffe*, 232 So. 3d at 434. For instance, if a defendant kidnaps or murders a witness before an attempt to contact the police, then the State would almost never be able to prove its case in chief under *McCray*. *See id.* The facts of *Taffe* bear out this reality. The defendant there robbed and kidnapped a victim, holding him at gunpoint while discussing with his codefendants whether or not to murder the victim. *Id.* at 433. After a codefendant's cooler head prevailed, the men warned the victim that they would kill him and his family if he ever contacted the police before allowing him to leave. *Id.* At no point during that encounter was the victim ever able to contact law enforcement; thus, under the First District's interpretation in *McCray*, the defendant did not commit witness tampering—despite his clear violation of the statute's plain language—because the victim did not attempt to contact law enforcement with a gun to his head. *Compare* § 914.22(1)(e), Fla. Stat. (criminalizing threats of physical force to victims with the intent to prevent communication with law enforcement), *with McCray*, 171 So. 3d at 832 ("[I]t is necessary to present evidence that the victim was attempting to contact law enforcement during the time of the incident to

- 15 -

support a conviction . . . .").  An absurd result such as this cannot stand in the face of the Legislature's clear guidance and attempt to protect victims from threatening actions.

## CONCLUSION

Accordingly, we approve the Second District's decision below in *McCloud* and disapprove the First District's line of precedent articulated in *McCray*.

It is so ordered.

PARIENTE, QUINCE, POLSTON, and LABARGA, JJ., concur.
CANADY, C.J., concurs in result.
LAWSON, J., concurs specially with an opinion, in which CANADY, C.J., concurs.

ANY MOTION FOR REHEARING OR CLARIFICATION MUST BE FILED ON OR BEFORE DECEMBER 27, 2018.  A RESPONSE TO THE MOTION FOR REHEARING/CLARIFICATION MAY BE FILED ON OR BEFORE JANUARY 2, 2019.  NOT FINAL UNTIL THIS TIME PERIOD EXPIRES TO FILE A REHEARING/CLARIFICATION MOTION AND, IF FILED, DETERMINED.

LAWSON, J., specially concurring.

I agree with the majority that the statutory construction issue presented by this case is answered by the unambiguous language of section 914.22, Florida Statutes (2014).  I also agree that we should approve the decision on review, *McCloud v. State*, 224 So. 3d 842 (Fla. 2d DCA 2017), and disapprove the conflict cases for the reasons explained in the majority's analysis of the plain language of that statute.  I disagree with the majority's preliminary statement that in all cases

"legislative intent" should be "the polestar that guides a court's statutory construction analysis," majority op. at 4 (quoting *State v. J.M.*, 824 So. 2d 105, 109 (Fla. 2002)), for the reasons explained in *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 312-14 (Fla. 2017) (Lawson, J., concurring in part and dissenting in part).

CANADY, C.J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

 Second District - Case No. 2D15-5289

 (Hillsborough County)

Howard L. "Rex" Dimmig, II, Public Defender, and William L. Sharwell, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida,

 for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, C. Suzanne Beschard, Bureau Chief, and Bilal Ahmed Faruqui, Assistant Attorney General, Tampa, Florida,

 for Respondent