# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

———————————————

Case Nos. 5D2024-0972
5D2024-2069
LT Case No. 2019-30639-FMCI

———————————————

MICHAEL HAWRYLUK, JR.,

Appellant,

v.

KATHRYN HAWRYLUK,

Appellee.

———————————————

On appeal from the Circuit Court for Volusia County.
Sandra C. Upchurch, Judge.

Michael Hawryluk, Jr., Ormond Beach, pro se.

Sheila M. Ennis, of Sheila M. Ennis, P.A., Edgewater, for
Appellee.

February 27, 2026

EDWARDS, J.

To determine whether the former or the 2023 amended
version of section 61.08, Florida Statutes, governs an award of
alimony requires us to answer the following question: At what
point is the *initial petition* in a dissolution of marriage case no
longer considered "pending?" There may be different answers for
different circumstances, but in this case, the initial petition ceased

to be "pending" once the trial court issued its written final judgment, regardless of the fact that an appeal was pursued, the judgment was reversed in part, and the trial court conducted further proceedings. We agree with the views on this topic held by the First and Fourth District Courts of Appeal. However, we certify that our decision is in direct conflict with the Second District's opinions in *Woodward v. Woodward*, 400 So. 3d 861 (Fla. 2d DCA 2025), and *Morgan v. Morgan*, 51 Fla. L. Weekly D53 (Fla. 2d DCA Jan. 7, 2026). We affirm the trial court's final orders in all respects, but of the several matters appealed by Appellant, the only issue that merits discussion is which version of section 61.08 applies.

### *Statutory Amendment*

In 2023, the Florida Legislature amended section 61.08, Florida Statutes (2023). Compared to the older statute, the amended version of section 61.08 reduces the types, amounts, and duration of alimony available in dissolution of marriage proceedings. Naturally, the changes in alimony law had to take effect at some point in time. The amended version states that, "[t]he court shall apply this section to *all initial petitions for dissolution of marriage . . . pending* or filed on or after July 1, 2023." § 61.08, Fla. Stat. (2023) (emphasis added). This is the parties' second appeal and requires us to decide whether the initial petition in this case was pending on July 1, 2023, as Former Husband claims the trial court erred in its decision of which version of section 61.08 governed.[1]

### *Timeline for the Current Case*

After twenty-six (26) years, in May of 2019, Appellee, Kathryn Hawryluk ("Former Wife"), petitioned to dissolve her marriage to Appellant, Michael Hawryluk, Jr. ("Former Husband"). The trial was held in December 2020. Judge Steven C. Henderson issued

---

[1] Former Husband filed a third appeal, which is consolidated with the second appeal, raising issues about the Fifth Order of Contempt rendered below, which we affirm without need for further discussion.

2

the initial final judgment in December of 2020, and an amended final judgment in August of 2021.

In the amended final judgment, Former Husband was ordered, *inter alia*, to pay Former Wife durational alimony of $3,513.75 per month for seven (7) years, $1,000 per month for five (5) years as equitable distribution, and $636.34 per month as child support. He was also ordered to pay Former Wife's attorney $1,200 per month for seventy-six (76) months as attorney's fees. Thus, Former Husband's monthly obligations under the amended final judgment totaled $6,350.09.

Former Husband appealed and Former Wife cross-appealed various aspects of the amended final judgment. This Court issued a written opinion on May 19, 2023, which affirmed all but one of the several issues the parties had raised. *See Hawryluk v. Hawryluk*, 365 So. 3d 477 (Fla. 5th DCA 2023). The opinion read, in part, that

> the [trial] court failed to make clear in the record how a $6,000 average monthly surplus can cover a $6,350.09 monthly obligation. Because the aggregate monthly payments would exceed the amount that the court found to be Former Husband's monthly surplus (i.e., ability to pay after living expenses), we reverse and order a recalculation of the payment schedule that would bring the monthly aggregate payment within the range of Former Husband's estimated monthly surplus of $6,000.

*Hawryluk*, 365 So. 3d at 478.[2] Former Husband's motion for rehearing was denied by order on June 20, 2023, and the mandate issued from this Court on July 18, 2023. Former Husband then sought review with the Florida Supreme Court, which declined to accept jurisdiction. *Hawryluk v. Hawryluk*, Case No. SC2023-1024, 2023 WL 8819870 (Fla. Dec. 21, 2023).

---

[2] Former Wife's attorney's fees motion for the first appeal was granted.

3

The matter was ultimately remanded to the trial court for further proceedings consistent with this Court's mandate. The post-appeal trial court, Judge Sandra Upchurch presiding, held a hearing on March 11, 2024, during which the issue of how to reduce Former Husband's monthly aggregate payment was the primary focus. During this hearing, Former Husband argued, *inter alia*, that the amended version of section 61.08 should be applied because there was "an alimony component still pending resolution on July 1, 2023."

The trial court rendered its Order Complying with Mandate by Recalculating Payment Schedule ("the Order"), which removed Former Husband's obligation to pay $1,000 per month as equitable distribution, thereby reducing his monthly aggregate payment to $5,350.09. The Order provided that Former Wife could pursue her equitable distribution rights by other means. Former Husband moved for rehearing, arguing that the Order was incorrect for a number of reasons, and again included a claim that the amount of alimony payable to Former Wife should have been newly determined by applying the 2023 amended version of section 61.08. The trial court denied his motion, and Former Husband timely commenced this appeal.

*Analysis*

Given that the initial petition for dissolution was filed well before July 1, 2023, the amended version of section 61.08 would apply only if the initial petition remained "pending" as of July 1, 2023.

Neither section 61.08, nor any other section of Chapter 61, defines "pending." In *Stockdale*, the First District searched to see if any case had judicially defined "pending" as used in Florida's dissolution statutes and found none. *Stockdale v. Stockdale*, 409 So. 3d 163, 167 (Fla. 1st DCA 2025). The First District then consulted several dictionaries and concluded that the overlapping ordinary and litigation-specific definitions of "not yet decided," "remaining undecided," and "awaiting decision," are sensible when applied to the term "pending," as used in the amended section 61.08. *Id.* at 166–67. The Fourth District agreed with the court in *Stockdale*, and cited it with approval for the proposition that

4

"within the practice of law, 'pending' means that the term it modifies (here, a petition) has not been decided." *Alfonso v. Alfonso*, 50 Fla. L. Weekly D1043 (Fla. 4th DCA May 7, 2025).

Former Husband claims that the 2023 amended version of section 61.08 should have been applied by the trial court on remand when it recalculated his monthly aggregate obligation because there was "an *alimony component* still pending resolution on July 1, 2023."[3] In making that argument, Former Husband relies on the Second District's *Woodward* and *Morgan* cases. We respectfully disagree with the Second District and Former Husband because both overlook the specific statutory language, which defines under what circumstances the amended alimony would be applied to pending matters.

Because Florida follows the supremacy of text principle, "[w]hen the statutory language is 'clear and unambiguous and conveys a clear and definite meaning,' . . . 'the statute must be given its plain and obvious meaning.'" *R.J. Reynolds Tobacco Co. v. Sheffield*, 266 So. 3d 1230, 1233 (Fla. 5th DCA 2019) (quoting *McNeil v. State,* 162 So. 3d 274, 275 (Fla. 5th DCA 2015) (additional citation omitted)). "Likewise, '[a] court cannot construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications.'" *Id.* (quoting *Casais v. State,* 204 So. 3d 969, 970 (Fla. 5th DCA 2016) (additional citation omitted)). When the language of a statute is clear and unambiguous, it is to be applied as written. *Richards v. State*, 288 So. 3d 574, 576 (Fla. 2020) (citing *McCloud v. State*, 260 So. 3d 911, 914 (Fla. 2018)).

Here, the amended section 61.08 clearly and unambiguously states that it only applies to "initial petitions pending or filed on or after July 1, 2023." The legislature could have made the amended section applicable to any aspect or issue of alimony pending on or after July 1, 2023, but it did not. It could have also chosen to say that the new law applied to all actions pending or

---

[3] Former Husband asserts that the amount of durational alimony he must pay would be reduced if the amended statute is applied, but he did not provide any further details.

filed on or after July 1, 2023, but it did not. Thus, Former Husband's argument fails.

With all due respect, we believe that the Second District answered the wrong question when deciding whether the old or amended version applied in *Woodward* and *Morgan*. In those cases, the Second District incorrectly focused on whether the dissolution *action* remained pending following an appeal and remand, rather than whether the *initial petition* remained pending. In our view, the initial petition for dissolution was no longer pending in either *Woodward* or *Morgan*, as final judgments had been entered in both cases and neither was remanded for a trial de novo.

In *Woodward*, the Second District noted that an action or case continues to exist post-judgment, and "continues to have life until there is a final determination on an appeal." *Woodward*, 400 So. 3d at 863 (quoting *Wilson v. Clark*, 414 So. 2d 526, 530 (Fla. 1st DCA 1982)). The First District later disagreed with *Woodward*, and announced in *Stockdale* that its decision in *Wilson* "has no application" and "provides no guidance" in the determination of whether the initial petition for dissolution remained pending on July 1, 2023. *Stockdale*, 409 So. 3d at 166.

The Second District's more recent opinion, *Morgan*, dealt with circumstances quite similar to those in our case. In *Morgan*, after final judgment issued, the former husband appealed and in 2021, the Second District reversed and remanded portions of the final judgment involving equitable distribution, alimony, and child support for further proceedings.[4] On remand, the trial court entered an amended judgment that awarded the former husband permanent periodic alimony. *Morgan*, 2026 WL 61539, at *1. Although the date of the post-appeal amended judgment isn't disclosed in the *Morgan* opinion, we will assume that it was sometime on or after July 1, 2023, as the Second District determined that the trial court erred in awarding permanent alimony as it was not available under the amended statute. *Id.* The Second District in *Morgan* discussed and disagreed with both

---

[4] *Morgan v. Morgan*, 327 So. 3d 898, 901 (Fla. 2d DCA 2021).

6

the Fourth District's opinion in *Alfonso* and our Court's decision in *Secrist*. *Id.* at \*2, \*3.

In *Stockdale*, the First District determined that the initial petition for dissolution remained pending on July 1, 2023, even though there had been a hearing on June 30, 2023, before the appointed magistrate, as no oral findings were announced, no written report had been submitted, and no judgment had issued from the circuit court. *Stockdale*, 409 So. 3d at 167–68. In other words, there had been no decision regarding the initial petition before July 1, 2023; thus, the petition remained pending.

In *Secrist*, on June 30, 2023, the trial court conducted a status conference and at the conclusion of the hearing, it orally announced its findings and rulings. *Secrist v. Secrist*, 412 So. 3d 781, 784 (Fla. 5th DCA 2025). However, the final judgment was not entered until after July 1, 2023. *Id.* We concluded that the initial petition remained pending until September 15, 2023, when the written final judgment was entered. *Id.*

The fact that Appellant here timely perfected an appeal and the appellate court ultimately reversed and remanded the case for the trial court's reconsideration on one issue does not change the fact that a decision was made regarding the initial petition; thus, it was no longer pending. The remand in this case was not for a trial de novo; rather, it was for entry of an amended judgment that would limit Former Husband's monthly financial obligations to an amount that was within his ability to pay. The trial court did not need to reconsider any aspect of the initial petition on remand. Instead, it reviewed the financial evidence before it, held a hearing on how to reduce Former Husband's monthly aggregate payment, and entered an amended judgment setting the amount of Former Husband's obligations lower than his monthly surplus.

We hereby certify that our decision in this case expressly and directly conflicts with the Second District's decisions in *Woodward* and *Morgan* as both cases were decided by focusing on answering the question of whether the *action* remained pending, rather than an analysis of whether the *initial petition* remained pending. *Woodward*, 400 So. 3d at 863; *Morgan*, 2026 WL 61539, at \*2.

7

AFFIRMED; DIRECT CONFLICT CERTIFIED WITH DECISIONS OF THE SECOND DISTRICT COURT OF APPEAL.

LAMBERT and SOUD, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____