DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MILTON N. WHYNES,**
Appellant,

v.

**AMERICAN SECURITY INSURANCE COMPANY** and **WELLS FARGO BANK, N.A.,**
Appellees.

Nos. 4D16-2862 and 4D16-3668

[March 21, 2018]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Richard L. Oftedal, Judge; L.T. Case No. 50-2015-CA-013127-XXXX-MB.

Jeffrey Golant of The Law Offices of Jeffrey N. Golant, P.A., Coral Springs, for appellant.

Farrokh Jhabvala, Frank Burt and Peter D. Webster of Carlton Fields Jorden Burt, P.A., Miami, for appellee, American Security Insurance Company.

Sara F. Holladay-Tobias and Emily Y. Rottmann of McGuireWoods LLP, Jacksonville, for appellee, Wells Fargo Bank, N.A.

CIKLIN, J.

Milton N. Whynes ("Whynes") appeals the dismissal of his complaint against American Security Insurance Company ("ASIC") and Wells Fargo Bank, N.A. ("Wells Fargo"). The complaint alleged a violation of a consumer protection statute, section 626.9551(1)(d), Florida Statutes (2015), and sought a declaratory judgment. Because the trial judge correctly determined that the statute is inapplicable to any of the allegations contained in the complaint, we affirm.

Whynes, a borrower, challenges the exchange of information between his mortgagee bank, Wells Fargo, and the servicer that monitors required levels of insurance on its mortgaged properties, ASIC, pursuant to section 626.9551(1)(d). Whynes alleges that, in exchange for this mortgage

monitoring service, ASIC has the exclusive right to impose "force-placed insurance"[1] on the Wells Fargo properties if the properties become uninsured through lapses or otherwise under-insured.

Underlying this action is section 626.9551(1)(d)'s provision that no person may use or provide to others insurance information required to be disclosed by a borrower to a lending institution in connection with a loan "for the purpose of *soliciting* the sale of insurance" without the borrower's consent. (Emphasis added). Whynes alleged that, despite his maintenance of insurance, ASIC force-placed insurance on Whynes' home. Further, he essentially alleged a specific violation of section 626.9551(1)(d) in that ASIC used Whynes' information to *solicit* the sale of a force-placed insurance policy to Wells Fargo. Whynes sought a declaratory judgment stating that ASIC may not retain his insurance information and that Wells Fargo may not provide any more protected information to ASIC.

ASIC and Wells Fargo separately moved to dismiss, alleging, among other things, that Whynes failed to state a cause of action: He did not allege a "solicitation" within the meaning of section 626.9551(1)(d) since his insurance was force-placed and Whynes, the borrower, was not directly solicited. The trial court agreed and dismissed the complaint.

Accordingly, the issue before this court is whether section 626.9551(1)(d) requires the prohibited solicitation to be directed to a borrower. We agree with the trial court that it does and, because there is no binding authority interpreting section 626.9551(1)(d), we offer our interpretation.

> It is a fundamental principle of statutory interpretation that legislative intent is the "polestar" that guides this Court's interpretation. We endeavor to construe statutes to effectuate the intent of the Legislature. To discern legislative intent, we look "primarily" to the actual language used in the statute. Further, "[w]hen the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent."

---

[1] "Force-placed insurance" refers to insurance coverage obtained by a mortgage servicer where a borrower has failed to maintain or renew insurance coverage on the subject property as required under the terms of the mortgage. *See* 12 U.S.C. § 2605(k)(2).

*Borden v. East–European Ins. Co.*, 921 So. 2d 587, 595 (Fla. 2006) (alteration in original) (citations omitted). "In determining legislative intent, we must give due weight and effect to the title . . . which was placed at the beginning of the section by the legislature itself" and which "is a direct statement by the legislature of its intent." *State v. Webb*, 398 So. 2d 820, 824-25 (Fla. 1981). Further, "[a] phrase must be viewed in the context of the entire statutory section." *WFTV, Inc. v. Wilken*, 675 So. 2d 674, 678 (Fla. 4th DCA 1996).

Turning to the subject statute, section 626.9551 is part of Florida's Unfair Insurance Trade Practices Act, *see* section 626.951(2), Florida Statutes (2015), and is entitled "Favored agent or insurer; coercion of debtors." The statute provides in relevant part:

> (1) No person may:
>
> . . . .
>
> (d) Use or provide to others insurance information required to be disclosed by a customer to a financial institution, or a subsidiary or affiliate thereof, in connection with the extension of credit *for the purpose of soliciting the sale of insurance,* unless the customer has given express written consent or has been given the opportunity to object to such use of the information. Insurance information means information concerning premiums, terms, and conditions of insurance coverage, insurance claims, and insurance history provided by the customer. The opportunity to object to the use of insurance information must be in writing and must be clearly and conspicuously made.

§ 626.9551, Fla. Stat. (emphasis added).

The trial court did not err because the plain language of section 626.9551 indicates its prohibition of solicitations made directly to borrowers. Although the language of subsection (1)(d) does not contain such an express limitation, the portion of the section's title, "coercion of debtors," contemplates a situation in which an insurer is dealing directly with an unsophisticated party such as an individual borrower, not a situation in which two sophisticated financial entities are dealing with one another, such as when a bank purchases a force-placed insurance policy from an insurer. The other subsections within section 626.9551 also support this conclusion, as they largely contemplate direct dealings with borrowers and/or customers. *See, e.g.,* § 626.9551(1)(a)-(b) (prohibiting a

lender from conditioning a loan on a borrower obtaining an insurance policy through a particular insurer and prohibiting the rejection of a requisite insurance policy because it was underwritten by a person not associated with a lender).

Whynes urges this court to defer to Florida Administrative Code Rule 69O-124.015, which he contends supports his interpretation of the statute. Because the language of the statute is clear, there is no reason to and therefore we will not defer to administrative construction. *See Felder v. King Motor Co. of S. Fla.*, 110 So. 3d 105, 107 (Fla. 4th DCA 2013) ("[A]dministrative construction of a statute . . . and other extraneous matters are properly considered *only in the construction of a statute of doubtful meaning.*" (emphasis in original) (citation omitted)).

*Affirmed.*

LEVINE and KLINGENSMITH, JJ., concur.
LEVINE, J., concurs specially with opinion, in which KLINGENSMITH, J., concurs.

LEVINE, J., concurring specially.

I concur with the majority opinion that the trial court correctly found that the text of section 626.9551(1)(d), Florida Statutes, was inapplicable to the facts of this case. However, I write to address two issues.

First, I write to note that in interpreting a statute, one should first consider the text of the statute. The legislature's intent is then considered only if a statute is not clear and unambiguous. The majority opinion contains the oft-quoted maxim that "[i]t is a fundamental principle of statutory interpretation that legislative intent is the 'polestar' that guides this Court's interpretation." As Justice Lawson recently opined:

> Florida's appellate courts have for decades routinely framed the statutory construction task in general (for all cases) as starting with the "legislative intent as polestar" maxim. We next explain that "legislative intent" is discerned "primarily from the text of the statute." This construct improperly and confusingly elevates a secondary rule of construction to a primary position, but is harmless in most cases because we regularly explain that intent is determined primarily from the text of the statute—and that the inquiry should end with the text when it is clear and unambiguous. However, there is a potential harm.

4

*Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 313-14 (Fla. 2017) (Lawson, J., concurring) (citations omitted). Our consideration of a statute should always start—and if possible, end—with the text. Only after reviewing the text should we look, if needed, to "legislative intent."

Second, I write to join those judges who have questioned the idea that courts should automatically defer to an agency's interpretation of a statute even where there is no technical expertise involved in its interpretation. In this case, appellant in his brief complained that "the circuit court failed to accord appropriate deference to the Florida Department of Financial Services' authoritative interpretation" of the statute in question. Appellant fails to explain why an agency can read or interpret a statute like the one dispositive to the resolution of this case with more clarity or accuracy than the members of the judiciary. *See Housing Opportunities Project v. SPV Realty, LC*, 212 So. 3d 419, 425 n.9 (Fla. 3d DCA 2016) ("There is no reason for the rule [of deference] when we are as capable of reading the statute or rule as the agency, which may well have its own [] agenda.").

The judiciary has long grappled with this issue. Justice Scalia analyzed the problem of federal administrative deference, or "*Chevron* deference," by noting that it could lead to the "abdication of judicial responsibility." Antonin Scalia, *Judicial Deference to Administrative Interpretations of Law*, 1989 Duke L.J. 511, 514 (1989). A half century earlier, Justice Sutherland warned that the "appropriation of unauthorized power by lesser agencies" threatens constitutional guarantees. *See Jones v. Sec. & Exch. Comm'n*, 298 U.S. 1, 24 (1936).

I agree with Judge Frank Shepherd, who opined in a concurrence that "this court should seriously consider the constitutional implications of blindly adhering to the mantra so regularly incanted by the Court to support, uphold, or approve agency decision-making that 'an agency's interpretation of a statute, with which it is entitled with administering shall be accorded great weight . . . .'" *Pedraza v. Reemployment Assistance Appeals*, 208 So. 3d 1253, 1256 (Fla. 3d DCA 2017) (citation omitted). He rightly pointed to the "due process problem of automatically taking the side of one of the parties in the case." *Id.* at 1257. He further noted that "deference to an agency's construction or application of a statute implicates . . . separation of powers questions deserving of serious contemplation by future members of this and other courts around the state." *Id.*

Because of due process and separation of powers concerns, I agree that we should give serious thought to the implications of automatic deference.

That sort of deference to agencies is often removed from any showing of agency expertise justifying such deference.

Thus, although there are times that there could be a demonstrable need for deference to agency interpretation, that deference ought to be coupled to a showing of exacting technical expertise. *See, e.g., Island Harbor Beach Club, Ltd. v. Dep't of Nat. Res.,* 495 So. 2d 209 (Fla. 1st DCA 1986) (deferring to Department of Natural Resources' interpretation of "beach-dune system" because it required agency expertise).

In other circumstances, such deference is unwarranted. *See Donato v. American Tel. & Tel. Co.,* 767 So. 2d 1146, 1153 (Fla. 2000) (rejecting Florida Commission on Human Relations' interpretation of "marital status," an unambiguous phrase); *Muratti-Stuart v. Dep't of Bus. & Prof'l Regulation,* 174 So. 3d 538, 540 (Fla. 4th DCA 2015) (observing that a court need not defer to an agency interpretation when that interpretation did not require the use of agency's special expertise); *Doyle v. Dep't of Bus. Regulation,* 794 So. 2d 686, 690-91 (Fla. 1st DCA 2001) (declining to defer to labor regulation agency's interpretation of an attorney fee statute).

Deference should be rare and infrequent and observed only when it is warranted by significant, specialized technical knowledge. Thus, as a result of legitimate concerns of due process and separation of powers, we ought to think long and hard before we automatically defer to agencies and, by deferring, diminish the court's own ability to read, analyze, and interpret the statute or regulation at issue. Justice Gorsuch got it right when writing about federal administrative deference while on the Tenth Circuit:

> There's an elephant in the room with us today. We have studiously attempted to work our way around it and even left it unremarked. But the fact is *Chevron* and *Brand X* permit executive bureaucracies to swallow huge amounts of core judicial and legislative power and concentrate federal power in a way that seems more than a little difficult to square with the Constitution of the framers' design. Maybe the time has come to face the behemoth.

*Gutierrez-Brizuela v. Lynch,* 834 F.3d 1142, 1149 (10th Cir. 2016) (Gorsuch, J., concurring).

Maybe the time has come to face unwarranted deference to administrative agencies here in Florida as well.

6

\*          \*          \*

*Not final until disposition of timely filed motion for rehearing.*