# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-4660

_____

FLORIDA THOROUGHBRED
BREEDERS' ASSOCIATION, INC.,
d/b/a FLORIDA THOROUGHBRED
BREEDERS' AND OWNERS'
ASSOCIATION,

      Appellant,

      v.

CALDER RACE COURSE, INC., and
FLORIDA DEPARTMENT OF
BUSINESS AND PROFESSIONAL
REGULATION, DIVISION OF PARI-
MUTUEL WAGERING,

      Appellees.

_____

No. 1D18-4674

_____

OCALA BREEDERS' SALES CO.,
INC.,

      Appellant,

      v.

CALDER RACE COURSE, INC.,
FLORIDA DEPARTMENT OF
BUSINESS AND PROFESSIONAL

REGULATION, DIVISION OF PARI-
MUTUEL WAGERING, and
FLORIDA THOROUGHBRED
BREEDERS' ASSOCIATION, INC.,
d/b/a FLORIDA THOROUGHBRED
BREEDERS' AND OWNERS'
ASSOCIATION,

      Appellees.

_____

On appeal from the Department of Business and Professional
Regulation, Division of Pari-Mutuel Wagering.
Robert Ehrhardt, Director.

September 25, 2019

WOLF, J.

These appeals challenge a Final Order Granting a Declaratory Statement requested by Calder Race Course Inc. (Calder) and issued by The Florida Department of Business and Professional Regulation, Division of Pari-Mutual Wagering (Division). The declaratory statement determined in part that pursuant to section 551.102(4), Florida Statutes, Calder could discontinue the operation of thoroughbred races and instead present a full schedule of live jai alai performances in order to maintain its "eligible facility" status to continue to conduct slot machine operations. The declaratory statement also determined that Calder was not required to conduct summer jai alai performances in the state fiscal year proceeding its operation of slot machines. We affirm as to all issues and specifically address one of appellants' challenges. We find the Division's interpretations of the constitutional amendment and statutes which would allow Calder to present jai alai games in order to continue to conduct slot machine operations are the most reasonable.

FACTS

In 2004, Florida voters approved a new constitutional provision authorizing Miami-Dade and Broward Counties to hold countywide referenda on whether to authorize slot machines within existing licensed pari-mutuel facilities which had conducted live racing or games in that county during 2002 and 2003. *See* art. X, § 23, Fla. Const. (2018).[1] On November 2, 2004, Florida voters approved the "Slots Amendment." Slot machines were approved in Broward County in 2004 and in Miami-Dade County in 2008.

In 2005 the Florida Legislature enacted chapter 551, Florida Statutes, entitled "Slot Machines," which governs the operation of slot machines at eligible facilities. A license to conduct slot machine gaming is tied to a pari-mutuel wagering permit-holder. *See* § 551.104(3), Fla. Stat. (2018).

Section 551.102(4) defines the term "eligible facility" for obtaining a slots permit as:

> Any licensed pari-mutuel facility located in Miami-Dade County or Broward County existing at the time of adoption of s. 23, Art. X of the State Constitution that has conducted live racing or games during calendar years 2002 and 2003 may possess slot machines and conduct

---

[1] § 23. Slot machines

(a) After voter approval of this constitutional amendment, the governing bodies of Miami-Dade and Broward Counties each may hold a county-wide referendum in their respective counties on whether to authorize slot machines within existing, licensed pari-mutuel facilities (thoroughbred and harness racing, greyhound racing, and jai-alai) that have conducted live racing or games in that county during each of the last two calendar years before the effective date of this amendment.

slot machine gaming at the location where the pari-mutuel permit-holder is authorized to conduct pari-mutuel wagering activities pursuant to such permit-holder's valid pari-mutuel permit provided that a majority of voters in a countywide referendum have approved slot machines at such facility in the respective county.

Calder Race Course, Inc., located in Miami-Dade County, has been a pari-mutuel permit holder for thoroughbred horse racing at its facility since 1971. As a pari-mutuel permit holder which conducted live racing during 2002 and 2003, Calder qualified for and obtained a permit authorizing it to have slot machine gaming at its pari-mutuel facility. Calder recently obtained a summer jai alai permit, and it intends to discontinue thoroughbred racing and begin conducting jai alai games if it continues to qualify for a slot machine permit after the change.

On July 31, 2018, Calder Race Course petitioned the Florida Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering (Division), for a Declaratory Statement in regard to two questions related to its intent to terminate thoroughbred racing, and to clarify whether the underlying basis for its slot machine permit could be its jai alai permit, rather than its thoroughbred horse racing permit:

Question 1: Whether, pursuant to section 551.102(4), Calder may discontinue the operation of thoroughbred races and instead operate a full schedule of live jai alai performances in order to maintain its 'eligible facility' status to continue to conduct slot machine operations?

Question 2: If the answer to question 1 is 'yes,' and Calder operates jai alai performances in lieu of thoroughbred races, whether Calder is required to conduct summer jai alai performances in the state fiscal year preceding its operation of slot machines as a summer jai alai licensee?

4

Question 1 was answered in the affirmative; Question 2 was answered in the negative.[2]

STANDARD OF REVIEW

The issues in this case involve interpretation of the statutes under chapters 550 and 551, Florida Statutes. The de novo standard applies to this court's review involving statutory interpretation:

> In interpreting a state statute or rule, a state court or an officer hearing an administrative action pursuant to general law may not defer to an administrative agency's interpretation of such statute or rule and must instead interpret such statute or rule de novo.

Art. V, § 21, Fla. Const.

ANALYSIS

The issue before us is whether the Division erred by interpreting the statutory definition of "eligible facility" to allow Calder to continue its slot machine operation even if it ceases thoroughbred racing and operates jai alai instead.

The "polestar" of statutory interpretation is legislative intent; when a statute's language is clear and unambiguous, the actual plain language of the statute represents the legislative intent. *See McCloud v. State*, 260 So. 3d 911, 914 (Fla. 2018); *Whynes v. Am. Sec. Ins. Co.*, 240 So. 3d 867, 879 (Fla. 3d DCA 2018). When a statute is clear and unambiguous, "courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." *See, e.g., Turbeville v. Dep't of Fin. Servs.*, 248 So. 3d 194, 196 (Fla. 1st DCA 2018) (quoting *Borden v. East–European Ins. Co.*, 921 So.2d 587, 595 (Fla. 2006)).

---

[2] We affirm the Division's response to Question 2 without further comment.

Section 551.102(4), defines an "eligible facility" for purposes of obtaining a slot machine permit as,

> Any licensed pari-mutuel facility located in Miami-Dade County or Broward County existing at the time of adoption of s. 23, Art. X of the State Constitution that has conducted live racing or games during calendar years 2002 and 2003 may possess slot machines and conduct slot machine gaming at the location where the pari-mutuel permit-holder is authorized to conduct pari-mutuel wagering activities pursuant to such permit-holder's valid pari-mutuel permit . . . .

Calder's thoroughbred horse racing facility satisfied the elements of an "eligible facility" under the statute for purposes of obtaining its slot machine license. Calder obtained its slot machine license as an "eligible facility" under section 551.102(4) because it qualified under the plain language of the referendum and the statutory definition:

> it is a licensed pari-mutuel facility;
> it is located in Miami-Dade County;
> it existed as a licensed pari-mutuel facility at the time of adoption of section 23 of Article X of the Florida Constitution; and
> it had conducted live thoroughbred horse racing as a licensed pari-mutuel facility during the two calendar years prior to the referendum.

Contrary to the appellants' arguments, nothing in the plain language of section 551.102(4) requires a facility to continue the same form of pari-mutuel wagering activity that originally qualified it for a slot machine license; nor does this statute tie an "eligible facility" to the same type of racing or gaming as it had when the constitutional amendment was approved.

In July 2017, the Division issued a Declaratory Statement to a greyhound racing permit-holder, West Flagler Associates, Ltd., addressing questions similar to those presented here. The link to

the Division's Declaratory Statement addressing West Flagler's questions is footnoted here:[3]

The Division stated that West Flagler could discontinue greyhound racing and that a new West Flagler jai alai fronton could be considered an "eligible facility" for slot machine gaming. In making that determination, the Division used the same interpretation of "eligible facility" that it used in this case.

The appellants also argue that their interpretation of section 551.102(4), read *in pari materia* with statutes governing the issuance and renewal of a slot machine gaming license, ties a slot machine licensee to operating the same form of racing or gaming as it had the two years prior to the approval of the constitutional amendment. The appellants specifically identify five statutes which could support their interpretation of the term "eligible facility" in section 551.201(4): sections 550.002(11) and (23); section 551.104(3); and sections 551.104(4)(b) and (4)(c).

We cannot read any of these statutes to mean a slot machine permit-holder would be required to continue to conduct the same form of racing or games under which it obtained its slots permit.

The appellants also interpret "eligible facility," to suggest that the "facility" is limited to only the *portion* of the property upon which the racing activity was conducted when Calder was first licensed. The appellees argue that "eligible facility" means the over-all areas of the facility in which pari-mutuel activity takes place. Defining "facility" too narrowly would not allow the slot machines to be located in connected buildings or anywhere on the premises that is not within the footprint of the actual racetrack or fronton. We, as did the Division, reject this narrow interpretation.

The Division's plain meaning interpretation of section 551.104, Florida Statutes, is also supported by the Florida Supreme Court's recent opinion in *Department of State v. Florida Greyhound Ass'n*, 253 So. 3d 513 (Fla. 2018). There, the court

---

[3] Available at:
https://www.doah.state.fl.us/FLAID/DPR/2017/DPR_0_07212017_095005.pdf

determined that article X, section 23, of the Florida Constitution, did not impose a continuing requirement for facilities to conduct greyhound racing in order for those facilities to qualify for slot machine gaming licenses. *See Id.* at 523 ("Article X, section 23 imposes no continuing requirement for those facilities to conduct dog racing or any other pari-mutuel activity in order to operate slot machines."). In reversing the circuit court's ruling that the ballot title and summary of the proposed Amendment 13 were defective, the court found that pari-mutuel wagering permit-holders in Miami-Dade or Broward Counties would qualify for slot machine gaming licenses.[4]

The supreme court in *Florida Greyhound Ass'n* reasoned that article X, section 23, of the Florida Constitution applied to past dog racing, explaining that, even if dog racing eventually ceased, horse racing and jai alai would continue and slot machine licenses based on the same would continue to be linked:

> Absent . . . statutory requirements to conduct dog racing in order to maintain a current license in good standing, pari-mutuel permitholders in Broward County or Miami-Dade County would qualify to operate slot machines pursuant to Article X, section 23 even if they had not conducted a single race or game since 2003.

*Fla. Greyhound Ass'n*, 253 So. 3d at 123.

Finally, the appellants argue that the ballot language of the constitutional amendment or the referendums did not contemplate a different type of racing or gaming being conducted at the same licensed pari-mutuel facility in the future. That simply reads too much into the ballot language and continues to misconstrue the definition of an "eligible facility."

---

[4] Amendment 13 sought to prohibit "racing of and wagering on greyhounds or other dogs."

We, therefore, AFFIRM.

ROBERTS and M.K. THOMAS, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Donna E. Blanton and Brittany Adams Long of Radey Law Firm, Tallahassee, for Florida Thoroughbred Breeders' Association, Inc., d/b/a Florida Thoroughbred Breeders' and Owners' Association; Ben J. Gibson, Daniel Hernandez, and Rachel Nordby of Shutts & Bowen LLP, Tallahassee, for Appellant, Ocala Breeders' Sales Co., Inc.

Katherine E. Giddings, BCS and Melanie C. Kalmanson of Akerman, LLP, Tallahassee, and Tamara S. Malvin of Akerman LLP, Fort Lauderdale, for Appellee, Calder Race Course, Inc.; Ross Marshman, Chief Appellate Counsel, Department of Business & Professional Regulation, Tallahassee, for Appellee, Florida Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering.